IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS REMICK, et al., on behalf of themselves and all others similarly situated, | : : : | No. 2:20-cv-01959-BMS |
| Plaintiffs-Petitioners, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons, | : : : : | |
| Defendants-Respondents. | : : | |

**INTERIM ORDER**

And now, this **4th** day of **May, 2021**, upon consideration of the record in this case and the Court's findings as described in Section I, below, **IT IS HEREBY ORDERED AND DECREED** that the Defendants, City of Philadelphia and Commissioner Blanche Carney ("City"), ensure compliance with the outstanding Orders of this Court, and with the specific Orders set forth in Section II, below.

**I.   THE FACTUAL RECORD, STIPULATIONS, ADMISSIONS OF THE PARTIES, AND FINDINGS OF FACT**

1. This Court previously entered Orders, still in effect, that were meant to reduce the risk that the Plaintiff class members contract the COVID-19 virus while incarcerated in the Philadelphia Department of Prisons ("PDP"), while also ensuring that Plaintiffs receive adequate out-of-cell time in order to shower, make phone calls to their lawyers and families, exercise, and have access to law libraries. *See* Orders of June 3, 2020 (ECF No. 35) and January 28, 2021 (ECF No. 63).

2. The Order of January 28, 2021 required the PDP to extend the out-of-cell time for all incarcerated persons except those in COVID-19 quarantine to three hours per day, based on the

Court's determination that the three-hour time period was necessary to balance between the physical and mental health of persons committed to the PDP, consistent with the need to maintain social distancing and other COVID-19 mitigation measures. This requirement was imposed with the understanding that episodic operational emergencies, such as incidents on the housing units, could impact the routine provision of three hours of out-of-cell time.

3.   For the period February 10, 2021 to the date of this Order there has been a pattern of noncompliance with the January 28, 2021 Order, particularly in the Curran-Fromhold Correctional Facility. Though concentrated at CFCF, reports from class members at each of the PDP facilities that they have regularly been denied the required amount of out-of-cell time have been filed with the Court on a regular basis. *See, e.g.*, *Joint Status Reports* of February 18, 2021; March 3, 2021; March 19, 2021; April 8, 2021; April 28, 2021 (ECF Nos. 65, 66, 66-1, 67, 67-1, 68, 68-1, 68-3, 69, 69-1, 69-3). The PDP Deputy Wardens (who have been designated as the City's monitors for compliance, as required by Order of the Court of December 18, 2020 (ECF No. 55)), and the City, have also reported that staffing shortages and other emergent events have impeded the ability of the facilities to meet or exceed the three hours of recreation time. *See Joint Status Report Exhibit B* of April 4, 2021 (ECF No. 68-2); *Joint Status Report Exhibit B* of April 28, 2021 (ECF No. 69-2). While the parties differ as to the scope and degree of noncompliance, *see generally Joint Status Reports*, based on a full review of the record, particularly the Deputy Wardens' certifications, the Court finds that Defendants have not complied with the Order of January 28, 2021.

4.   Plaintiffs have consistently reported that noncompliance with the terms of the Court's Orders regarding out-of-cell time is heightened on weekends. The evidence presented to the Court substantiates that staff call-out rates are higher on weekends. *See* Ex. C, Mar. 29, 2021

*Joint Status Report*, ECF No. 67-3. Furthermore, Plaintiffs' Declarations allege, and the Deputy Warden certifications show, that out-of-cell time is routinely, negatively impacted by staffing shortages. Consistent with this evidence, it appears to the Court that many of the non-reporting officers have used vacation time, sick time, and FMLA leave time, while others have simply failed to report to work without stating a reason. *See, e.g.*, *Joint Status Report Exhibit B* of April 4, 2021 (ECF No. 68-2) (listing multiple officers as "AWOL"); *Joint Status Report Exhibit B* of April 28, 2021 (ECF No. 69-2) (same).

     5.     Under the terms of the Court's Order of June 3, 2020, Plaintiffs are entitled to move for the City to be held in contempt and for sanctions for substantial noncompliance after providing written notice of the alleged areas of noncompliance, the parties discuss and negotiate a resolution of the Plaintiffs' claims, and thereafter, if the matter is not resolved between the parties, by written motion to the Court. After a hearing, if one is necessary, and if the Court finds noncompliance, the Court may issue a citation of civil contempt and impose appropriate sanctions as a means of coercing compliance and compensating class members for the violation of the Court's Order.

     6.     As summarized above, the Court finds that additional remedial measures are necessary to cure the detailed noncompliance and therefore Orders the measures specified in Section II in order to ameliorate the staffing attendance issues plaguing the institutions.

     7.     The Court hereby places Defendants on notice that, absent clear and convincing evidence that Defendants are in compliance with the Court's Order, the Court will entertain a motion for civil contempt by the Plaintiffs and will strongly consider the imposition of monetary sanctions against the Defendants.

     8.     The Court further provides notice that, if evidence submitted to the Court shows that noncompliance with the Court's Orders is significantly impacted by non-reporting to work by

correctional officers, the Court will determine whether additional orders, including an order joining the Correctional Officers' Union as a third-party defendant in this case, are appropriate and necessary to ensure the protection of the constitutional rights of the Plaintiff class as reflected by Court Orders in this case.

**II.    BASED ON THE ABOVE FINDINGS AND CONSIDERATIONS, THE COURT HEREBY ORDERS:**

9. For Fiscal Year 2022, the City shall fully fund three classes of correctional officers of no fewer than a total of 180 cadets. Furthermore, the City shall fund additional classes of sufficient size to replace those staff members who separate from employment due to retirement, resignation, or termination during the Fiscal Year 2022.

10. The City shall report to the Court, on a monthly basis, the number of security staff that have separated from employment. Should it appear to the Court that the City's hiring plans are insufficient for replacement or enhancement of the PDP staffing needs, the Court will consider further specific mandates regarding class hiring.

11. The City shall continue to impose progressive disciplinary sanctions on correctional officers who have been found, under the terms of the current collective bargaining agreement, to have violated their duty to report to work. Further, where the violations or misconduct are repeated or otherwise would merit long-term suspensions or termination from employment, the City shall impose increasingly severe employment sanctions.

12. The City shall continue to use overtime as a means of providing sufficient staffing of the facilities, under the terms of the collective bargaining agreement.

13. The City shall institute an incentive plan under which, on a quarterly basis, correctional officers who report to work for each of their scheduled shifts shall receive additional payments of no less than $148.50 per quarter, by way of a "roll call check."

14. The City, by its designated officials in the Office of the Mayor and/or the Office of the Managing Director, including those City officials responsible for negotiating contract issues with the Union, shall provide an update to the Court, within one week of entry of this Order, and ongoing regular reports as necessary, regarding their discussions with the Union about the following remedial staffing measures:

    a. Implementing staffing by correctional officers on 12-hour as opposed to 8-hour shifts;

    b. Securing the Union's agreement to urge its members to: (i) regularly report to work except where the officer seeks sick or family leave because of actual illness that prevents reporting to work or for valid family leave purposes, (ii) voluntarily accept overtime positions, including overtime by "drafting" at the end of a shift, and (iii) end the current practice of mass non-reporting on weekend shifts;

    c. Securing an agreement that all correctional officers will inform or report to the City whether or not they have been vaccinated with the COVID-19 vaccine; and

    d. Securing an agreement that all correctional officers shall be vaccinated with the COVID-19 vaccine unless the employee is granted a medical or religious exemption.

15. Recognizing the confidentiality concerns attendant to such negotiations, such update shall be provided via Letter, not docketed, to the Court. The Court may require the individuals engaging in such discussions to appear before the Court and explain the progress made.

**IT IS SO ORDERED.**

**By the Court:**

**/s/ Berle M. Schiller**

---

**BERLE M. SCHILLER, J.**