IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS REMICK, et al., on behalf of themselves and all others similarly situated, | : <br> :    No. 2:20-cv-01959-BMS <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons, | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**I.      INTRODUCTION**

Plaintiffs submit this Memorandum of Law in response to the Motion to Dismiss ("MTD") the Third Amended Complaint ("TAC"). Defendants' arguments that Plaintiffs lack standing both as individuals and as class representatives, and that Plaintiffs fail to allege facts sufficient to plausibly establish the claims asserted, are wholly without merit. Many of Defendants' arguments are identical to those made in opposing Plaintiffs' Motion for Class Certification, which has now been granted, *see* ECF Nos. 152, 153, and Motion for Preliminary Injunction, which has been fully briefed by the parties. We incorporate by reference the arguments we made earlier on those Motions, but for ease of reference we repeat the main points in this Memorandum of Law.

**II.     GOVERNING LEGAL STANDARDS**

In ruling on a motion to dismiss under Rule 12(b)(6), a district court must determine "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Kedra v. Schroeter*, 876 F.3d 424, 440–41 (3d Cir. 2017) (cleaned up). The Court must accept all well-pleaded allegations of the complaint as true, view them in the light most favorable to the

1

plaintiff, and draw all inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc); *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). Factual allegations must be taken as true, regardless of their level of specificity; only legal conclusions that restate "the ultimate legal issue that the plaintiff[] need[s] to prove" should be disregarded. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266–67 (3d Cir. 2021). A motion to dismiss must be denied unless "a court finds that plaintiff's claims lack facial plausibility." *Morrow*, 719 F.3d at 165. "[P]lausible does not mean probable[.]" *Martinez*, 986 F.3d at 265. Rather, "[t]he court need only be able to draw a 'reasonable inference' that the defendant has broken the law." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If the complaint includes "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of [the] cause of action," the plausibility requirement is met, and the motion to dismiss must be denied. *Walker v. Coffey*, 956 F.3d 163, 166 (3d Cir. 2020) (cleaned up).

A motion to dismiss under Rule 12(b)(1) is the proper vehicle by which to raise a challenge to the Court's subject matter jurisdiction, including challenges based on lack of standing. Fed R. Civ. P. 12(b)(1); *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 321 (3d Cir. 1998). Defendants can challenge the Court's subject matter jurisdiction either facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." *Id.* The same standard applies to a facial challenge to standing as to a motion to dismiss under Rule 12(b)(6); therefore, the plaintiffs' well-pleaded factual allegations must be accepted as true, and all inferences must be drawn in the plaintiffs' favor. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

2

### III. ARGUMENT

Defendants make two broad arguments in seeking dismissal of the Third Amended Complaint. First, that the named Plaintiffs lack standing to assert claims on behalf of the proposed classes of incarcerated persons (which have now been certified, in slightly revised form, ECF Nos. 152, 153) and that the Court should dismiss the Third Amended Complaint at this early stage and not reach the Motion for Class Certification. Second, that the named Plaintiffs fail to allege facts sufficient to plausibly establish violations of the ADA and constitutional violations under the First, Eighth, and Fourteenth Amendments relating to conditions of confinement, denial of necessary medical care, failure to protect from physical harm, excessive force, and denial of due process in disciplinary hearings. We address these in turn.

#### A. Class Action Standing of the Named Plaintiffs

The arguments made by Defendants relating to the standing of the named Plaintiffs to assert claims on behalf of the proposed classes of incarcerated persons have been addressed in briefing on the Motion for Class Certification and have been rejected by this Court. Given that decision, there is even a greater burden now on Defendants on what is tantamount to a motion to strike a complaint's class allegations. Courts have consistently held that this extreme step is disfavored and may only be taken when class certification "is a clear impossibility," *Dieter v. Aldi, Inc.*, No. 18-846, 2018 WL 6191586, at *6 (W.D. Pa. Nov. 28, 2018) (quoting 5C Wright & Miller, *Fed. Prac. And Proc.* 1383 (3d ed. 2018)), and there are no grounds justifying dismissal based on this argument. *See also Luppino v. Mercedes-Benz*, 09-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013); *P.V. v. School Dist. of Phila.*, No. 11-4027, 2011 WL 5127850, at *5 (E.D. Pa. Oct. 31, 2011).

Further, standing to sue requires only an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and "likely [to be] redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff's burden to establish "injury in fact" is "low, requiring nothing more than an identifiable trifle of harm." *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015) (cleaned up).

"An allegation of future injury" is sufficient to establish standing when "there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *see also Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003) ("[T]he courts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes.") (collecting cases). Requiring incarcerated plaintiffs to wait until serious risks of harm come to fruition before suing would be irreconcilable with the Supreme Court's holding that "the Eighth Amendment protects against future harm … [and] a remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

While *Hellling* was not about standing per se, the Court's analysis in *Helling* "displays a willingness … to conceptualize exposure to enhanced risk as a type of cognizable injury" that is sufficient to establish standing. *Baur*, 352 F.3d at 633 n.7; *see also Nichols v. Riley*, 141 F. App'x 868, 869 (11th Cir. 2005) ("An inmate may be granted injunctive or declaratory relief even in the absence of proof that he actually has been injured by the dangerous condition [and therefore] [t]he district court erred by finding that Nichols lacked standing because he failed to demonstrate that he had suffered an actual, physical injury."); *Sledge v. Erie Cty. Prison*, No. 20-00336, 2021 U.S. Dist. LEXIS 209468, at *14 (W.D. Pa. Oct. 29, 2021) ("Where equitable or other prospective relief is sought based on existing prison conditions, it is often enough to plead a genuine risk of exposure

to disease or other dangerous conditions to support standing."); *Rafael L.O. v. Tsoukaris*, No. 20-3481, 2020 U.S. Dist. LEXIS 62389, at *16 (D.N.J. Apr. 9, 2020) ("The Court finds that Petitioners have standing in light of the Supreme Court's decision in *Helling*[.]").

Defendants' reliance on *Lewis v. Casey*, 518 U.S. 343, 357 (1996), is misplaced, as their discussion completely ignores that, outside of the access-to-courts context, risk of harm is itself sufficient to satisfy the injury-in-fact requirement. *See Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (Alito, J.) (explaining, regarding an Eighth Amendment deliberate indifference claim, that "*Lewis* arguably d[oes] not control because (a) *Lewis* was a First Amendment right-of-access to-the-courts case and (b) … *Helling* … squarely held … that inmates could bring a claim based on an assertion that existing conditions of confinement created a serious health hazard and put them at an increased risk in the near future").[1]

Since exposure to risk of harm is sufficient for standing in this context, Defendants' assertion that "courts may only consider the allegations of the named plaintiffs, and not the generalized allegations of unnamed plaintiffs or putative class members" misses the mark. *See* Defs.' Mem. 8 (quoting *Tatum v. Chrysler Grp. LLC*, No. 10-4269, 2012 WL 6026868, at *4 (D.N.J. Dec. 3, 2012)). All the allegations in the Third Amended Complaint are, in a sense, "allegations of the named plaintiffs," because they describe conditions in PDP that all incarcerated individuals, including the named plaintiffs, are at risk of being harmed by.

As Defendants implicitly acknowledge with their citation to *Hassan*, Defs.' Mem. 12, and as this Court has now ruled, ECF No. 152, only one plaintiff with standing for each claim is needed

---

[1] *Christopher v. Harbury*, on which Defendants also rely, is even further afield, as it is clear that the *Christopher* court's statement that "the named plaintiff must identify a nonfrivolous, arguable underlying claim" is only applicable to access-to-courts claims. 536 U.S. 403, 415 (2002) (cleaned up).

5

to avoid dismissal on jurisdictional grounds. *Hassan*, 804 F.3d at 289 (stating that the standing inquiry requires courts to ask whether "***at least one plaintiff*** has suffered an 'injury in fact'") (emphasis added). Indeed, it is well-established that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 70 (2006).

Finally, this Court has ruled that named Plaintiffs who are not currently incarcerated have standing as class representatives under the "relation-back" doctrine as to all claims made in the original Complaint. ECF No. 152 at 25 (rejecting Defendants' contention that the claims of the named Plaintiffs who are not currently incarcerated are moot).[2] Since risk of harm is sufficient for standing here, and only one plaintiff need have standing for each claim, Defendants' motion to dismiss on jurisdictional grounds should be denied.

### B. Sufficiency of the Factual Allegations

Under the governing standards on a motion to dismiss, Plaintiffs need show only "plausible" constitutional claims based on their factual allegations. *See supra*, § II. Defendants' arguments that the detailed allegations in the Third Amended Complaint, in combination with a factual record that spans almost two years of litigation and which includes court-filed declarations, reports of the parties, admissions by the Defendants, and other factual support of Plaintiffs' claims,

---

[2] Defendants argue that neither Plaintiff Maldonado nor any other Plaintiff has standing to represent the claims of the relatively few persons in the proposed classes who are serving sentences on final convictions because their claims are governed by the Eighth and not the Fourteenth Amendments. *See* Defs.' Mem. 12. That assertion fails as well, as the facts alleged show that Plaintiff Maldonado suffered or is at high risk of suffering all the constitutional violations alleged in the Third Amended Complaint. Moreover, the allegations regarding the actions and inactions of the defendants are sufficient to show violations of the Sixth, Eighth, and Fourteenth Amendments of both pretrial and convicted persons at PDP. All, by virtue of PDP's classification and housing assignments are at risk of the same constitutional injuries.

6

*see* ECF No. 152 at 19, are insufficient at the pleading stage is far wide of the mark. We address each claim in turn.

1. Conditions of Confinement

The issues presented by the Eighth and Fourteenth Amendment claims regarding conditions of confinement, including out-of-cell time, have been fully briefed by the parties on the Motion for Preliminary Injunction, and Plaintiffs incorporate by reference their arguments in the Memorandum of Law in Support of Motion for Preliminary Injunction, ECF No. 128 at 13–24, and in their Reply Memorandum, ECF. No. 150 at 2–8. Here, we briefly address the arguments made in the Motion to Dismiss that warrant an additional response.

a. *Medical Care and Treatment*

Whether judged by Eighth or Fourteenth Amendment standards, Plaintiffs have alleged facts that plausibly show violations of their right to necessary and adequate medical care at PDP.[3] As set forth in the Motion for Preliminary Injunction, ECF No. 128 at 6–7, 18–20, due in large part to the conceded lack of an adequate correctional staff, there have been systematic delays and denials of necessary medical care, as almost all care, whether by way of sick call, in-house clinics, medication disbursements, or out-of-facility appointments, is dependent on adequate staffing to transport, supervise, and protect all persons engaged in the delivery of medical care, treatment,

---

[3] While Plaintiffs satisfy both standards, "the law in this circuit is well-settled" that the controlling standards for medical and other conditions of confinement claims under the Eighth and Fourteenth Amendments are distinct and that pretrial detainees are entitled to greater constitutional protections than sentenced prisoners. *Davis v. City of Philadelphia*, 284 F. Supp. 3d 744, 752 (E.D. Pa. 2018); *see also Morgan-Mapp v. George W. Hill Corr. Facility*, No. 07-2949, 2008 U.S. Dist. LEXIS 69434, at *41 (E.D. Pa. Sep. 12, 2008) ("[T]he standard governing pretrial detainees must be somewhat less than the high standard articulated in *Farmer* [*v. Brennan*, 511 U.S. 825 (1994)].") (Schiller, J.). This is consistent with the holdings of several Courts of Appeals. *See Brawner v. Scott Cty.*, 14 F. 4th 585, 596–97 (6th Cir. 2021); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 34–35 (2d Cir. 2017).

and services. Yet, as Defendants concede, they are short over 500 correctional officers and have an absentee rate that ranges from 20–50% (or higher) on a daily basis. Whatever defenses may be asserted on these clearly established facts in terms of the constitutional claims (and we believe there are none) are for the Defendants to prove.

Defendants resort once again to the flawed "divide and conquer" approach taken in opposing class certification and entry of a preliminary injunction, arguing that not all the named Plaintiffs assert a personal denial of medical care. But as this Court has ruled, ECF No. 152 at 22, for class representation purposes, not every named Plaintiff must suffer every violation alleged, and each, as a result of systemic violations, faces the risk of future deprivations. *See supra*, § III.A; Pls.' Reply in Support of 3d Am. Mot. for Class Cert., ECF No. 145, at 9–13; Pls.' Mem. in Supp. of Mot. for Preliminary Injunction, ECF No. 128, at 18–20. And this showing of risk of future harm is all that is required:

> With respect to pretrial detainee claims based on the alleged absence or inadequacy of prison medical policies resulting in a delay in needed treatment, a plaintiff must show that the alleged policy shortcoming "creates a risk" of inadequate medical treatment "that is sufficiently obvious as to constitute" reckless indifference to his serious medical need.

*Hojnowski v. Primecare Med.*, No. 06-1228, 2009 U.S. Dist. LEXIS 37016, at *17 (E.D. Pa. Apr. 30, 2009) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 585 (3d Cir. 2003)).

Defendants also misstate the definition of a "serious medical need." *See* Defs.' Mem. 18. Contrary to Defendants' assertion, a medical condition need not be one that may produce "death, degeneration or extreme pain" to trigger constitutional protections. *See id.* (quoting *Pittman v. Cty.*

*of Union*, No. 06-1617, 2008 WL 906235, at *5 (D.N.J. Apr. 1, 2008)).[4] Rather, any medical condition "that has been diagnosed by a physician as requiring treatment," "is so obvious that a lay person would easily recognize the necessity for a doctor's attention," or results in "unnecessary and wanton infliction of pain" in the absence of treatment is a "serious medical need" for constitutional purposes. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Similarly misplaced is Defendants' argument that a Fourteenth Amendment claim based on delay in providing medical treatment must "result[] in substantial harm" to be actionable. *See* Defs.' Mem. 18 (citing *Marshall v. Penn Twshp.*, No. 08-90, 2009 WL 3241873, at *10 (W.D. Pa. Oct.6, 2009)). Eighth and Fourteenth Amendment medical claims in the Third Circuit require only "suffering" or a risk of harm. *Washington v. Gilmore*, 841 F. App'x 466, 468–69 (3d. Cir. 2021) ("Deliberate indifference may be manifested by … delayed medical treatment for non-medical reasons … that results in suffering or risk of injury.") (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)); *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) ("Needless suffering resulting from a denial of simple medical care, which does not serve any penological purpose, is inconsistent with contemporary standards of decency and thus violates the Eighth Amendment."); *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 346 (holding that "the threat of tangible residual injury" is sufficient for an Eighth Amendment medical claim). Even emotional harm resulting from the denial of adequate medical care, without any physical harm, is sufficient to state a constitutional claim. *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990)

---

[4] The *Pittman* Court relies on a dated Second Circuit case but does not cite to any Third Circuit cases for this proposition. *See Pittman*, 2008 WL 906235, 2008 U.S. Dist. LEXIS 28068, at *14 (citing *Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994)).

9

The Third Amended Complaint and the record in this case provide more than plausible allegations of systemic denials and delays in necessary medical care and treatment.

### b. *Failure to Protect and Excessive Force*

Defendants make similarly flawed arguments on Plaintiffs' claims of a failure to provide protection from assaults by other incarcerated people at PDP and excessive force by correctional officers. Regarding failure to protect, taking the same myopic view of the record, Defendants assert that only Plaintiff Maldonado alleges harm caused by a failure to protect, but without sufficient allegations that Defendants had cause to know of the risk to him or others. To the contrary, the allegations in the Third Amended Complaint and the record in this case, which reflect frighteningly dangerous conditions and injuries already suffered due to lack of correctional officer staffing, fully rebut Defendants' arguments. Regarding excessive force, Defendants assert that only Plaintiffs Pledger and Maldonado allege being subjected to excessive force, but with insufficient context. This assertion ignores the core causative factor in this case—lack of adequate staffing—that has precipitated the increased violence among incarcerated people and excessive force by correctional officers. Thus, all the named Plaintiffs and members of the certified class face a risk of harm sufficient to state a claim even without each of them actually having been assaulted. *See Dongarra v. Smith*, -- F. 4th --. 2022 U.S. App. LEXIS 5347, at *6–9 (3d Cir. March 1, 2022) (holding that a prisoner who alleged a corrections officer was deliberately indifferent to the risk he would be assaulted stated an Eighth Amendment claim even though he was not actually assaulted and that he would be entitled to injunctive relief were the risk still ongoing).

Prison officials violate the Constitution where, as here, they are "deliberately indifferent to the possibility that the conditions under which they house[] [incarcerated people] significantly increase[] the possibility of [ ] well-known harms," including violent assaults. *Nami v. Fauver*, 82

F.3d 63, 68 (3d Cir. 1996).[5] Courts have recognized that conditions in a prison, including lack of adequate staffing, tensions among the incarcerated population, the prevalence of weapons, and logistical issues can combine to create an unconstitutional "generalized risk of violence." *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019); *see also Lane v. Philbin*, 835 F.3d 1302, 1307–08 (11th Cir. 2016); *Parkell v. Pierce*, No. 17-157, 2018 U.S. Dist. LEXIS 104666, at *22–23 (D. Del. June 22, 2018) (denying motion to dismiss where plaintiff alleged that policies including "chronic understaffing, an over-reliance on overtime, [and] failing to fill critical security positions within the prison … created, in effect, a highly dangerous situation in which inmate violence was expected"); *Tillery v. Owens*, 719 F. Supp. 1256, 1276 (W.D. Pa. 1989) (explaining how insufficient staffing contributed to an unconstitutionally high risk of violence and stating that, contrary to the holdings of courts in other circuits, "[a] pervasive risk of harm does not require proof of a reign of violence and terror").

Plaintiffs have adequately alleged that the staffing deficiencies, tensions caused by lack of out-of-cell time, and other conditions have combined to expose everyone incarcerated in PDP to an unconstitutional risk of violence. *See* TAC ¶¶ 21, 22, 23(a), 23(k), 23(l), 23(m), 26, 27, 28, 32; *see also* ECF No. 150 at 3–4. Likewise, the same conditions have led to a documented increase in the use of force by correctional officers, force that is frequently used arbitrarily and unnecessarily, thus exposing everyone in PDP to a risk of violence at the hands of correctional officers as well. *See* TAC ¶¶ 23(n), 27, 29, 32; *see also* ECF No. 150 at 3–4. Moreover, when corrections officers use pepper spray, it is not just the intended targets of it who suffer, but others who are exposed as

---

[5] As with other conditions of confinement claims brought by pretrial detainees, pretrial detainees' failure-to-protect claims do not actually require deliberate indifference. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *see also supra*, n.3. But regardless of the standard applied, Plaintiffs state a claim.

well. *See Alexander v. Campbell*, No. 13-21, 2014 U.S. Dist. LEXIS 20821, at *18 (W.D. Pa. Feb. 20, 2014) (finding second-hand exposure to pepper spray actionable under the Eighth Amendment).

The Third Amended Complaint and the record in this case thus include ample allegations of a generalized risk of violence in PDP at the hands of corrections officers and among incarcerated people.

        2. <u>Municipal Liability</u>

Amidst a series of broadly baseless arguments in the MTD, the assertion that Plaintiffs have failed to allege sufficient facts to demonstrate municipal liability stands out in terms of its frivolous nature. As the Court recognized in its opinion on class certification, the central anchor to the Third Amended Complaint and the cause of virtually all of the constitutional violations suffered by Plaintiffs and the putative classes is the City's policies, customs, and practices in failing to provide sufficient staffing, resources, and services to ensure constitutionally adequate conditions of confinement, necessary medical care, protection from violence and excessive force, and due process of law in disciplinary hearings. *See, e.g.*, ECF No. 152 at 20 ("It is clear [ ] that there is sufficient evidence demonstrating that rampant staff shortages and the implementation of certain COVID-19-related policies arguably bled into alleged violations of the law[.]"); *id.* at 26 ("[T]he instant case involves systemwide policies and practices that affect all class members at each of PDP's facilities."); *see also id.* at 19 (noting that "Defendants themselves have cited to staff shortages as the root cause of the PDP's issues").

In this context, the argument that we merely "'paraphrase' the elements of *Monell* liability," *see* Def. Mem. 23, is flatly contradicted by the Third Amended Complaint and the case record. For almost two years, the City has fully conceded that it controls, as a matter of policy,

custom, and practice, the hiring, retention, and discipline of correctional officers and other necessary PDP staff. The record thus shows that it is City policy and practices that are at issue (and not a theory of *respondeat superior*). As a defense, the City has maintained that it has policies and practices that are as robust and complete as possible to provide adequate staffing and that the City is not at fault for the severe shortages in staffing or high rates of absenteeism. The City can continue to assert this defense, but any judgment on that issue must await the hearing on the Motion for Preliminary Injunction and/or trial.

The Third Amended Complaint properly states a claim for municipal liability. *See, e.g.*, *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (explaining that municipalities are liable under § 1983 for "deprivations resulting from the decisions … of those officials whose acts may fairly be said to be those of the municipality" or from "custom[s]" or "practice[s] [that are] so widespread as to have the force of law"); *Sanchez v. Young Cty.*, 956 F.3d 785, 793 (5th Cir. 2020) ("Practices that are sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct, can represent official policy.") (cleaned up); *Burke v. Regalado*, 935 F.3d 960, 999–1000 (10th Cir. 2019) (finding "a policy or custom of providing deficient medical care at the jail" based in part on understaffing); *Natale*, 318 F.3d at 585 (holding that "the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions" is a basis for municipal liability); *Beck v. City of Pittsburgh,* 89 F.3d 966, 975 (3d Cir. 1996) (finding municipal liability where an internal report put the city on notice of deficiencies in its practices but the city failed to act); *Hasty v. Cty. of Montgomery*, No. 12-4335, 2014 U.S. Dist. LEXIS 27147, at *3, *13 (E.D. Pa. Mar. 4, 2014) (holding that plaintiff's allegations that his requests for medical care "were ignored, delayed, and denied" "clearly support

a plausible claim for relief under the theory that Defendants failed to adopt and implement policies and procedures necessary to ensure timely medical assistance").

### 3. Access to Counsel and the Courts

We have fully briefed the access to counsel and courts claims and the inapplicability of the *Younger* doctrine. *See* ECF No. 128 at 24–27; ECF No. 150 at 8–15. Nothing presented by Defendants on these issues in the MTD is materially different from their arguments on the Motion for Preliminary Injunction and therefore we incorporate our previous arguments by reference. In sum: (1) Defendants' policies and practices are inhibiting members of the Plaintiff class from getting to court and communicating with their legal counsel in their criminal cases; (2) *Younger* abstention is entirely inappropriate because, among other reasons, Plaintiffs do not seek an injunction against their state criminal prosecutions; and (3) recent changes in PDP's policies regarding transportation of incarcerated persons to court do not moot Plaintiffs' claims, in light of the "voluntary cessation" doctrine and continued inadequacies in PDP's procedures. Additionally, with the current very low COVID-19 infection rates in PDP and the community,[6] persistent limitations on Plaintiffs' access to counsel and the courts are entirely attributable to PDP's staffing shortages and other management failures, rather than necessary medical protective measures.

### 4. Due Process in Disciplinary Hearings

In light of Defendants' concession that two of the named Plaintiffs state procedural due process claims, Defs.' Mem. 29, and the Court's class certification decision, ECF No. 152, 153, no further response is warranted. Plaintiffs have fully briefed the merits of their procedural due process claim as well as its lack of mootness. *See* ECF No. 128 at 27–29; ECF No. 150 at 16.

---

[6] *See, e.g.*, Letter to Court from Counsel for Defendants, March 11, 2022, at 2 (stating that of 771 incarcerated persons tested for COVID-19 for court appearances for the week of February 28–March 4, "none returned a positive test").

5. ADA Claim

As Plaintiffs have explained in prior briefing, the Third Amended Complaint states a valid ADA claim based on Defendants' failure to make necessary modifications to PDP practices to ameliorate the effects of current conditions in PDP—including lack of out-of-cell time, delays and inadequacies in the provision of medical and mental health care, and violence on the part of correctional officers and incarcerated persons—on individuals with disabilities. ECF No. 128 at 29–32; *see also* ECF No. 152 at 20 (listing examples from the Third Amended Complaint of the effects of Defendants' failures on Plaintiffs with disabilities). Accordingly, we need only briefly reiterate the fundamental principles that are ignored by Defendants.

First, failure to make reasonable accommodations for individuals with disabilities is itself a form of prohibited disability discrimination. *Haberle v. Troxell*, 885 F.3d 171, 180 (3d Cir. 2018). Thus, "a public entity may be required to make reasonable modifications to its facially neutral policies which disparately impact people with disabilities." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *see also Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) ("[A] person with a disability may be the victim of discrimination precisely because [they] did not receive disparate treatment when [they] needed accommodation."). Defendants' assertion that "[t]here is no plausible allegation in the Third Amended Complaint that any action was taken 'by reason of' the Plaintiffs' disabilities," Defs.' Mem. 31, is therefore of no moment. Defendants' implication—that if individuals with disabilities are subjected to the same conditions as those without disabilities, there can be no ADA violation— completely misapprehends the significance of the ADA. *See, e.g.*, *Tellis v. Leblanc*, No. 18-541, 2022 U.S. Dist. LEXIS 3593, at *19 (W.D. La. Jan. 6, 2022) (denying summary judgment for defendants on ADA claim where defendants conceded that they "do[] not limit the use of extended

lockdown for inmates with a diagnosed [serious mental illness] or consider these inmates' mental health before placing them on extended lockdown for a prolonged period of time"); *see also* ECF No. 152 at 21.

Second, in the Third Circuit, public entities have an affirmative obligation to take "proactive measures to avoid the discrimination proscribed by Title II" even in the absence of a specific request for an accommodation. *Chisolm v. McManimon*, 275 F.3d 315, 324–25 (3d Cir. 2001). Where, as here, systemwide policies and practices have a disparate impact on individuals with disabilities, the onus is on the public entity to make reasonable modifications, not on each disabled person to individually request accommodations.

Third, when the failure to provide necessary medical care to an individual with a disability leads to the exclusion of that individual from the programs, services, or activities of a public entity, it is actionable under the ADA. *See, e.g.*, *Rouse v. Plantier*, 997 F. Supp. 575, 582 (D.N.J. 1998), *vacated on other grounds*, 182 F.3d 192 (3d Cir. 1999) (denying summary judgment on ADA claim because "Plaintiffs have come forward with evidence that Defendants either directly or indirectly, *i.e.*, by failing to adequately treat their diabetes and the complications thereof, excluded Plaintiffs from participating in prison programs").

Plaintiffs' ADA claim should therefore proceed.

### IV.     CONCLUSION

For the reasons explained above, the Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Su Ming Yeh
Su Ming Yeh (PA 95111)
/s/ Matthew A. Feldman
Matthew A. Feldman (PA 326273)
/s/ Sarah Bleiberg
Sarah Bleiberg (PA 327951)
PENNSYLVANIA INSTITUTIONAL
LAW PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
(215)-925-2966
smyeh@pailp.org
mfeldman@pailp.org
sbleiberg@pailp.org

/s Nia Holston
Nia Holston (PA 327384)
/s Rupalee Rashatwar
Rupalee Rashatwar (FL 1011088)
/s Bret Grote
Bret Grote (PA 317273)
ABOLITIONIST LAW CENTER
PO Box 31857
Philadelphia, PA 19104
(412) 654-9070
nia@alcenter.org
rupalee@alcenter.org
bretgrote@abolitionistlawcenter.org

/s/ David Rudovsky
David Rudovsky (PA 15168)
/s/ Susan M. Lin
Susan Lin (PA 94184)
/s/ Grace Harris
Grace Harris (PA 328968)
/s/ Jonathan H. Feinberg
Jonathan H. Feinberg (PA 88227)
KAIRYS, RUDOVSKY, MESSING,
FEINBERG, & LIN, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com
slin@krlawphila.com
gharis@krlawphila.com
jfeinberg@krlawphila.com

/s/ Benjamin R. Barnett
Benjamin R. Barnett (PA 90752)
/s/ Will W. Sachse
Will W. Sachse (PA 84097)
/s/ Mary H. Kim
Mary H. Kim*
/s/ Nicolas A. Novy
Nicolas A. Novy (PA 319499)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2496
Ben.Barnett@dechert.com
Will.Sachse@dechert.com
Mary.Kim@dechert.com
Nicolas.Novy@dechert.com

*Attorneys for Plaintiffs*

DATE: March 14, 2022

* indicates counsel who will seek admission or *pro hac vice* admission

17

**CERTIFICATE OF SERVICE**

      I, Matthew A. Feldman, hereby certify that a true and correct copy of Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Third Amended Complaint was served upon counsel for Defendants via ECF on March 14, 2022.

*/s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
PA INSTITUTIONAL LAW PROJECT
718 Arch Street, Suite 304S
Philadelphia, PA 19106
T: 215-925-2966
F: 215-925-5337
mfeldman@pailp.org

DATE: March 14, 2022