IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS REMICK, et al., on behalf of themselves and all others similarly situated, | : : : | No. 2:20-cv-01959-BMS |
| Plaintiffs, | : : : | |
| v. | : : : | |
| CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons, | : : : : : | |
| Defendants. | : | |

## SETTLEMENT AGREEMENT

**I.     Introduction**

The parties hereby agree to the entry of an Order by this Court based on the provisions of this Settlement Agreement as a full settlement of the claims pending in this litigation.

For settlement purposes only, and without an admission by Defendants of a violation of any federal civil right, the parties agree that this Agreement meets the requirements of 18 U.S.C. §3626(a)(1).

Neither the fact of this Agreement nor any statement of claims contained herein shall be used in any other case, claim, or administrative proceedings, except that Defendant and its employees and agents may use this Agreement and any statement contained herein to assert issue preclusion or *res judicata.*

**II.    Substantive Provisions**

1. No later than April 20, 2022, the Defendants shall implement measures, including but not limited to signing and retention bonuses, to enhance the hiring and retention of correctional officers to ensure that there are a sufficient number of correctional officers to cover all posts, according to PDP post-plans, on each shift at each facility.  These measures shall continue until this goal is achieved and thereafter to maintain the proper number of correctional officers.

2. Upon the entry of this Agreement, and no later than May 15, 2022, Defendants shall ensure that each incarcerated person at the Philadelphia Department of Prisons (PDP), with the exception of those who are housed in a designated segregation unit, shall be provided the following out-of-cell times for the following periods: (a) no later than May 15, 2022, no less than four hours of out-of-cell time each day; and (b) no later than

August 1, 2022, no less than five hours of out-of-cell time each day. The parties agree that out-of-cell times under normal operations of the PDP have ranged from 8-10 hours a day and increases of out-of-cell time should continue to be made beyond the August 1, 2022 standard, with a presumptive expected increase to six hours by October 15, 2022. The parties agree that this next step shall be based on the recommendations of the Court-appointed Monitor, *infra,* para. 19, as to scope and timing. Accordingly, the Monitor shall provide recommendations to the Court, based on the Monitor's analysis of all relevant factors and proposals by the parties, on the next increase in out-of-cell time no later than October 1, 2022, and thereafter on a quarterly basis. *See also* para. 4, *infra.*

3. Defendants shall ensure that persons on segregation units shall be provided: (a) no later than May 1, 2022, thirty minutes out-of-cell time on a daily basis and (b) no later than July 1, 2022, no less than one hour each day. Defendants further agree that they will continue their practice of not placing incarcerated people in segregation units due to the lack of space or staffing on other units.

4. By November 1, 2022, based on discussions between the parties and the Court-appointed Monitor, the parties and the Monitor shall submit to the Court a plan for a return to normal operations of the PDP (regarding out-of-cell time, programming, visits, and other services). During the period that precedes a return to normal operations, if the Monitor determines that the Defendants are not providing the agreed-upon out-of-cell time, Defendants must provide specific reasons for non-compliance to the Plaintiffs and the Monitor. The parties and the Monitor shall then engage in discussions to resolve the issues in dispute. If no agreement is reached, Defendants may move for the amendment or modification of these provisions, but only upon good cause shown, and the Plaintiffs may move for appropriate intervention by the Court, including possible contempt of court sanctions.

5. The Defendants shall provide adequate and timely medical and mental health treatment to all incarcerated persons. The Defendants agree to institute the programs and measures (referred to as "the Backlog Plan") set forth by Bruce Herdman, PDP Chief of Medical Operations, at his deposition of March 21, 2022, to address the existing backlog. The "Backlog Plan" is a new, three-month effort to see backlogged patients as soon as possible. The City has allocated substantial funding to allow Corizon Health services to engage additional agency staff to augment its full-time staff to further reduce backlogs. Four agencies are contracted to provide staff towards this end. Agencies will provide additional providers, including MD/DOs, NPs, LCSWs, and RNs for this effort. Based on these programs and measures, the Defendants agree to substantially eliminate the existing backlog by August 1, 2022, and thereafter to continue addressing any remaining backlog consistent with these programs and measures. Substantial elimination shall mean reduction to a backlog of no more than ten to fifteen percent of the current backlog.

6. By September 30, 2022, the PDP and Corizon shall re-establish a mental health program for persons who are in segregation status.

7. PDP will continue to provide law library access for all incarcerated individuals. The Monitor and the parties will discuss access and scheduling matters and the Monitor shall make any recommendations on these matters by August 1, 2022.

8. All future disciplinary proceedings at the PDP shall be held in accord with established due process rights, including the presence of the incarcerated person who is the subject of the proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974); *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); *Stevenson v. Carroll*, 495 F.3d 62, 70–71 (3d Cir. 2007). The PDP shall: (a) expunge the disciplinary records for all persons who were not present at their disciplinary hearings for the period March 2020 to the current date; (b) release from segregation all incarcerated persons who were not present at their disciplinary hearings but who are still serving a disciplinary sentence, or who are in administrative segregation following a disciplinary sentence imposed without a hearing; (c) cancel sanctions that require payments for damage to property or other restitution, and/or return payments made by persons who were required to pay for damage to property or other harms. Provided, however, the PDP may seek to conduct due process hearings for individuals covered by this provision who are still in segregation, but only: (a) if there is a small and discrete number of such cases, and (b) upon first providing counsel for Plaintiffs the names of those persons, the disciplinary charges, and information related to the length of placement in segregation. Nothing in this section prohibits persons subject to the disciplinary process set forth above from asserting individual legal challenges to the discipline. Defendants shall provide to counsel for plaintiffs a list of individuals and disciplinary matters subject to this exception by April 15, 2022.

9. PDP has undertaken expansion efforts to increase the number of tablets available within the PDP facilities by adding eighty (80) additional tablets, according to operational capabilities and housing designs. The expansion of tablets is as follows: from four (4) to six (6) tablets on each housing unit at CFCF for a total of fifty-six (56) additional tablets; and, at RCF, expanding from six (6) to eight (8) tablets on the 2nd and 3rd floor (4 housing units) and expanding from eight (8) to twelve (12) tablets on the 1st floor of RCF (4 larger units) for a total of twenty-four (24) additional tablets at RCF. This expansion process will be completed by May 1, 2022. The parties and the Monitor will discuss any future increases in the number of tablets based on all relevant factors, including operational feasibility and physical capacity. Further, the Monitor and the parties shall discuss whether any policies and practices are necessary to address equitable and fair individual access to available tablets, and if so, the PDP shall implement agreed upon practices.

10. PDP agrees to maintain 15 minutes of free phone calls on a daily basis for the PDP population. Further, the Monitor and the parties shall discuss whether any policies and

practices are necessary to address equitable and fair individual access to phones and, if so, the PDP shall implement agreed upon practices. Upon a return to normal operations, the PDP will revert to the provision of 10 minutes of free phone calls.

11. The Monitor and the parties shall discuss the issues unique to PICC regarding emergency call systems and access to tablets and/or phones and determine whether any policies and practices are necessary to address these matters considering all relevant factors, including operational feasibility and physical capacity.

12. PDP initiated the lock replacement program for PICC and RCF, which will be completed by June 30, 2022. For the repair of call button devices in existing facilities, PDP will conduct a one-time test of all call buttons and make any necessary repairs by August 1, 2022. Any future complaints related to the operation of call buttons shall be addressed through work orders, which will be addressed and completed by Defendants in a timely manner. PDP will provide refresher training before June 1, 2022, to correctional staff on PDP practices with respect to responses to the emergency call button system.

13. As of March 7, 2022, PDP reinstituted in-person visitation for all vaccinated incarcerated persons with family members. PDP is in the process of increasing capacity for in-person visits by increasing the number of visits that can be accommodated during the current hourly schedule. At a minimum, current CFCF visiting shall be increased by 8 slots, PICC increased by 4 slots, and RCF increased by 2 slots. Further, the parties and Monitor shall discuss all matters related to visitation, and the monitor shall issue recommendations on these issues. PDP reaffirms that it will acknowledge and record the vaccination status of those individuals who provide information that they were vaccinated outside of PDP.

14. PDP shall continue to follow a policy of providing attorneys with access to their clients within 45 minutes of their scheduled visit. For remote legal visits (in all formats), the PDP shall continue to ensure that the client is on the call/computer/video within 15 minutes of the scheduled start time of the appointment. For these time frames, PDP will not be responsible for delays caused by the incarcerated person or by exigent circumstances, but where a delay is caused by the incarcerated person or by exigent circumstances, PDP will inform the attorney of the delay.

15. The PDP shall continue the present policy regarding testing of persons who are scheduled for court. Those who are housed on "green blocks" are either fully vaccinated or are not considered to have been exposed to COVID. They will be rapid-tested the night before court, and they will be brought to court if they receive negative test results. Those housed on a "yellow block" may have been exposed to a COVID-positive individual, and they will be rapid-tested twice, the night before court and the morning of court. They will be transported to court if both tests are negative. Those housed on a "red block" are COVID

positive and will be isolated for ten days and not brought to court during that time frame. These protocols will be maintained subject to continued cooperation from criminal justice partners and on the advice of the Philadelphia Department of Public Health. Provided, however, that the Defendants shall not unilaterally change the protocols and they shall timely notify Plaintiffs' counsel of any change or proposed change in these protocols.

16. If there becomes a need in the future for use of quarantine housing areas at PDP, CDC guidelines shall continue to be followed for those who have been exposed to COVID-19. Under current policy, *see Interim Guidance on Management for Correctional and Detention Centers, June 9, 2021*, for persons who are vaccinated and are exposed to a person with COVID-19, but test negative, they shall not be quarantined; for those who have been exposed to COVID-19, but who have not been vaccinated, and test negative, they shall be quarantined for a period of ten days and released at that time if they test negative.

17. Defendants agree to continue conducting the weekly General Inspection ("GI") cleaning days with supplies provided by officers to clean cells and housing area, and to provide regular laundry services under current PDP policies.

18. PDP policies and training address correctional staff's use of force, use of pepper spray, de-escalation measures, and an incarcerated person's non-compliance with verbal commands. The parties agree that correctional officers should follow de-escalation measures provided in PDP policies. The Monitor shall review these issues and make recommendations based on a review of all relevant material and factors. In the interim, PDP shall advise and re-train correctional officers on the proper application of the Use of Force and Restraints Policy, 3.A.8, and with respect to de-escalation requirements in accordance with the PDP policy which in part states: "Force is only used when necessary and only to the degree required to control the inmate(s) or restore order…The use of pepper spray is justifiable when the Officer's presence and verbal command options have been exhausted and the inmate remains non-compliant or the inmate's level of resistance has escalated….Staff will not use pepper spray as a means of punishment, personal abuse, or harassment."

19. The parties agree to the appointment of a Monitor to assist the Court and the parties to implement this Agreement and Order, as well as future Order(s) of the Court, if necessary. This Agreement for a Monitor anticipates that both sides shall cooperate with the Monitor and will act in good faith in their consideration of recommendations made by the Monitor on the various substantive provisions of this Agreement. The Court shall appoint a Monitor or Monitoring team based on the advice and recommendations of the parties. The Defendants shall be responsible for the financial remuneration of the Monitor. The parties and the Monitor shall agree to policies to facilitate the monitoring process, including access to the documents, reports, data, PDP personnel, and directly to the PDP facilities. These policies shall respect the safety, security, and privilege concerns of the PDP under terms and conditions to be approved by the Court. The Monitor shall also develop a system to receive information directly from the plaintiff

class, their families, and advocates. The Monitor shall provide regular reports to counsel and the Court, which shall be filed of record, subject to possible redactions for confidential information. Plaintiffs' counsel shall have access to all documents and records underlying such regular reports. Any disputes about materials to be supplied under this provision shall be resolved by the Monitor and the Court. Upon the approval of this Agreement, the parties shall draft a protocol outlining the duties, functions, and responsibilities of the Monitor for the Court's consideration and approval.

20. Upon the entry of this Agreement and Final Order, the Defendants agree to withdraw their Petition for Permission to Appeal this Court's Class Certification Order, now pending in the Court of Appeals for the Third Circuit.

21. Prior to the filing of a Motion for Contempt, Plaintiffs must first notify the Monitor and the Defendants of the alleged non-compliance, and the Monitor and the parties shall then meet and confer on a process for resolving the dispute. If no agreement is reached, Plaintiffs may file a Motion to Enforce or Motion for Contempt of Court, or other appropriate motion with the Court.

22. This Agreement and Order are being entered at a time when the known COVID-19 infection rate is zero and there are no quarantine housing areas at PDP except for intake purposes. If and when the COVID-19 infection rate increases to a point that the Defendants believe that provisions of this Agreement and Order cannot be implemented without compromising the health and security of the plaintiff class and staff at PDP, the PDP may: (a) in exigent circumstances requiring immediate changes in PDP operations, implement the necessary changes and provide a statement of the facts and circumstances necessitating these actions to the Monitor and counsel for plaintiffs; or (b) in the absence of exigent circumstances requiring immediate changes in operations, seek amendments to this Order by Motion to the Court.

23. The parties shall discuss and agree on payments for Plaintiffs' attorney fees and costs. If an agreement cannot be reached, the Court will entertain a Motion for Fees and Costs.

24. The Court shall retain jurisdiction over this Agreement for a period of two years. Provided, however: (a) if Defendants establish substantial compliance for a period of time that demonstrates that oversight is no longer necessary, the Court on motion may terminate all or parts of the Agreement and dismiss this action before two years, and (b) if Plaintiffs contend that there continues to be substantial non-compliance with any specific provision of this Agreement at the two-year mark, they may move the Court for an appropriate extension of the Agreement as to the applicable provision.

**Counsel for Plaintiffs:**

| | |
|---|---|
| */s/ Su Ming Yeh* | */s/ David Rudovsky* |
| Su Ming Yeh (PA 95111) | David Rudovsky (PA 15168) |
| */s/ Matthew A. Feldman* | */s/ Susan M. Lin* |
| Matthew A. Feldman (PA 326273) | Susan Lin (PA 94184) |
| */s/ Sarah Bleiberg* | */s/ Grace Harris* |

Sarah Bleiberg (PA 327951)
PENNSYLVANIA INSTITUTIONAL LAW PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
(215)-925-2966
smyeh@pailp.org
mfeldman@pailp.org
sbleiberg@pailp.org

*/s Nia Holston*
Nia Holston (PA 327384)
*/s Rupalee Rashatwar*
Rupalee Rashatwar (FL 1011088)
*/s Bret Grote*
Bret Grote (PA 317273)
ABOLITIONIST LAW CENTER
PO Box 31857
Philadelphia, PA 19104
(412) 654-9070
nia@alcenter.org
rupalee@alcenter.org
bretgrote@abolitionistlawcenter.org

\* indicates counsel who will seek admission or *pro hac vice* admission

Grace Harris (PA 328968)
*/s/ Jonathan H. Feinberg*
Jonathan H. Feinberg (PA 88227)
KAIRYS, RUDOVSKY, MESSING, FEINBERG, & LIN, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com
slin@krlawphila.com
gharis@krlawphila.com
jfeinberg@krlawphila.com

*/s/ Benjamin R. Barnett*
Benjamin R. Barnett (PA 90752)
*/s/ Will W. Sachse*
Will W. Sachse (PA 84097)
*/s/ Mary H. Kim*
Mary H. Kim\*
*/s/ Nicolas A. Novy*
Nicolas A. Novy (PA 319499)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2496
Ben.Barnett@dechert.com
Will.Sachse@dechert.com
Mary.Kim@dechert.com
Nicolas.Novy@dechert.com

**Counsel for Defendants:**

/s/ *Craig M. Straw*
Craig M. Straw
First Deputy City Solicitor
City of Philadelphia Law Dep't

/s/ *Anne B. Taylor*
Chief Deputy City Solicitor

/s/ *Danielle B. Rosenthal*
Danielle B. Rosenthal
Deputy City Solicitor
Civil Rights Unit, Law Dep't
1515 Arch Street, 14th Floor
Philadelphia, PA 19102