**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS REMICK, et al., on behalf of themselves and all others similarly situated,** | : : : | **No. 2:20-cv-01959-BMS** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons,** | : : : : | |
| **Defendants.** | : | |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs filed this lawsuit on behalf of themselves and other similarly situated

individuals who are incarcerated in the Philadelphia Department of Prisons ("PDP"), alleging

that Defendants failed to provide humane conditions of confinement and protections against

COVID-19 in the Philadelphia jail system, in violation of the United States Constitution and the

Americans with Disabilities Act.  Defendants City of Philadelphia and Commissioner Blanche

Carney (collectively the "City") have denied these allegations throughout the litigation.

Following more than two years of litigation, including the issuance of several court

orders relating to COVID-19 protocols and jail conditions (ECF Nos. 35, 55, 58, 59, 62, 70, 74,

92, 93), two contested motions for contempt filed by Plaintiffs (ECF Nos. 71, 73, 113, 119, 124),

a motion to vacate under the Prison Litigation Reform Act filed by Defendants and contested by

Plaintiffs (ECF Nos. 118, 127), the Court's certification of the class (ECF Nos. 152, 153),

Defendants' petition for permission to appeal the Court's class certification order, and a

scheduled preliminary injunction hearing (*see* ECF No. 131), the parties entered into arm's-

length settlement negotiations that resulted in the execution of a global Settlement Agreement

("Settlement").  The parties believe the terms of the Settlement are fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and warrant Court approval.

A Joint Motion for Preliminary Approval of Class Action Settlement was filed with the Court on April 12, 2022. (ECF No. 165). The Court granted preliminary approval of the class action Settlement on April 13, 2022 (ECF No. 166) and ordered notice of the preliminary approval be posted on each housing unit, at the law libraries, and on the PDP electronic communications system, and shared by Plaintiffs' counsel in response to individual requests for information from class members. Class members had the opportunity to submit objections. These objections have been reviewed and considered, and the parties agree that these objections, considered individually or collectively, do not provide grounds to deny final approval of the Settlement. As detailed in the accompanying memorandum of law, the class action Settlement is fair, reasonable, and adequate.

Wherefore, this is a joint motion, and all parties respectfully request that the proposed Settlement Agreement be granted final approval by the Court.

Respectfully submitted,

/s/ Su Ming Yeh
Su Ming Yeh (PA 95111)
/s/ Matthew A. Feldman
Matthew A. Feldman (PA 326273)
/s/ Sarah Bleiberg
Sarah Bleiberg (PA 327951)
PENNSYLVANIA INSTITUTIONAL LAW
PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
(215)-925-2966
smyeh@pailp.org
mfeldman@pailp.org
sbleiberg@pailp.org

/s David Rudovsky
David Rudovsky (PA 15168)
/s/ Susan M. Lin
Susan Lin (PA 94184)
/s/ Grace Harris
Grace Harris (PA 328968)
/s/ Jonathan H. Feinberg
Jonathan H. Feinberg (PA 88227)
KAIRYS, RUDOVSKY, MESSING,
FEINBERG, & LIN, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com
slin@krlawphila.com
gharis@krlawphila.com
jfeinberg@krlawphila.com

/s Nia Holston
Nia Holston (PA 327384)
/s Rupalee Rashatwar
Rupalee Rashatwar (FL 1011088)
/s Bret Grote
Bret Grote (PA 317273)
ABOLITIONIST LAW CENTER
PO Box 31857
Philadelphia, PA 19104
(412) 654-9070
nia@alcenter.org
rupalee@alcenter.org
bretgrote@abolitionistlawcenter.org

/s/ Benjamin R. Barnett
Benjamin R. Barnett (PA 90752)
/s/ Will W. Sachse
Will W. Sachse (PA 84097)
/s/ Mary H. Kim
Mary H. Kim*
/s/ Nicolas A. Novy
Nicolas A. Novy (PA 319499)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2496
Ben.Barnett@dechert.com
Will.Sachse@dechert.com
Mary.Kim@dechert.com
Nicolas.Novy@dechert.com

* indicates counsel who will seek admission
or *pro hac vice* admission

*Attorneys for Plaintiffs*

*/s/ Craig M. Straw*
Craig M. Straw, First Deputy City Solicitor
(PA 78212)
*/s/ Anne B. Taylor*
Anne B. Taylor, Chief Deputy City Solicitor
(PA 206057)
*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal, Deputy City Solicitor
(PA 329676)
CITY OF PHILADELPHIA DEPARTMENT
OF LAW
1515 Arch Street
Philadelphia, PA 19102-1595
(215) 683-5442
craig.straw@phila.gov
anne.taylor@phila.gov
danielle.rosenthal@phila.gov

*Attorneys for Defendants*

DATE: June 22, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS REMICK, et al., on behalf of** | : | |
| **themselves and all others similarly situated,** | : | **No. 2:20-cv-01959-BMS** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA; and** | : | |
| **BLANCHE CARNEY, in her official** | : | |
| **capacity as Commissioner of Prisons,** | : | |
| | : | |
| **Defendants.** | | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF
CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION**

Plaintiffs filed this lawsuit on behalf of themselves and other similarly situated

individuals who are incarcerated in the Philadelphia Department of Prisons ("PDP"), alleging

that Defendants failed to provide humane conditions and protections against COVID-19 in the

Philadelphia jail system in violation of the United States Constitution and the Americans with

Disabilities Act.  Defendants City of Philadelphia and Commissioner Blanche Carney

(collectively the "City") have denied these allegations throughout the litigation.

The Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement,"

attached hereto as Exhibit A), if approved by the Court, will resolve all claims in this matter.

The parties' proposed Notice to the Class ("Notice," attached hereto as Exhibit B) informed the

class members of the Agreement and gave them an opportunity to voice any objections. The

parties respectfully request that the Court find that the Agreement meets the standards for

approval of a class action settlement and grant final approval.

## II.        BACKGROUND

Plaintiffs initiated this class action on April 20, 2020, pursuant to 42 U.S.C. § 1983, the United States Constitution, and the Americans with Disabilities Act, seeking to compel Defendants City of Philadelphia and Commissioner Blanche Carney to protect individuals incarcerated in the PDP from the risks of serious harm they faced from the twin dangers of COVID-19 and prolonged isolation in their cells.  (*See* ECF No. 1).  Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction, seeking an order requiring the City to provide humane conditions of confinement in PDP facilities, with a focus on COVID-19 protections and adequate out-of-cell time due to lockdown conditions.  (ECF No. 18).  Defendants responded in opposition to Plaintiffs' application for injunctive relief, contending that PDP's actions were consistent with CDC guidance.  (ECF No. 22).  The parties reached a partial settlement agreement, which was approved by the Court and entered as a Consent Order on Partial Settlement Agreement on June 3, 2020.  (ECF No. 35).

Thereafter, over the course of nearly two years, the Court held biweekly status conferences, and the parties submitted status reports, declarations from incarcerated people, certifications from prison staff, and information relating to COVID-19 infection and vaccination rates.  Plaintiffs alleged that the conditions at PDP continued to violate their constitutional rights and that staffing shortages (affected by both a lack of employees and absenteeism) caused these conditions.  Defendants have denied that the jail conditions, policies, and protocols were unconstitutional or unlawful, and have maintained that incarcerated people in PDP were adequately protected from COVID-19.  The Court issued a series of interim orders on matters such as mandatory COVID-19 testing, increased out-of-cell time, and a return to pre-pandemic programming, among other things.  (*See* ECF Nos. 35, 55, 58, 59, 62, 70, 74, 92, 93).  Plaintiffs filed two motions for contempt during the case (*see* ECF Nos. 71, 113), both of which were

resolved through settlement.  Defendants also filed a motion to vacate the Court's September 14, 2021 Order under the PLRA, which was, with Plaintiffs' second motion for contempt, also resolved through settlement.  (*See* ECF No. 118.)

More recently, Plaintiffs filed a Third Amended Complaint (ECF No. 147), a third amended Motion for Class Certification (ECF No. 125), and a Motion for Preliminary Injunction (ECF No. 128).  In response, Defendants filed a Motion to Dismiss, an opposition to class certification, and an opposition to the application for injunctive relief.  (ECF Nos. 148, 139, 138).  On March 11, 2022, the Court certified this case to proceed as a class action.  (ECF Nos. 152, 153).  Defendants sought permission to appeal the Court's class certification order on March 25, 2021.

While these motions were pending, the parties entered into arms-length settlement negotiations, as a result of which the parties have executed a global Settlement Agreement. Under the terms of the Agreement, the City will: (1) implement measures to enhance the hiring and retention of correctional officers; (2) provide minimum amounts of out-of-cell time on a schedule with presumptive increases; (3) continue to increase capacity for in-person visits by family and friends, and in conjunction with Plaintiffs and a Court-appointed Monitor, develop a plan for return to pre-pandemic programming; (4) continue to ensure adequate and timely medical and mental health treatment along with mental health programming, with benchmarks in reducing backlogs for medical appointments; (5) ensure compliance with individuals' due process rights at disciplinary hearings; (6) continue the expansion of phone and tablet access for incarcerated people; (7) continue the implementation of a lock replacement program and implement refresher training on the emergency call button system; (8) continue to follow

COVID-19-related protocols to ensure individuals are available for court and for meetings with attorneys; and (9) provide refresher training on the PDP's use of force policy.

The Settlement Agreement also provided for the appointment of a Monitor to assist the Court and the parties in implementing the Agreement and Order, and in the formulation of any future order(s) as necessary, for a period of two years.  The parties submitted, and the Court approved, a protocol detailing the role and functions of the Monitor which will include issues of access to documents, reports, data, PDP personnel, and the PDP facilities, and the ability to receive information from class members, while respecting the safety, security, and privilege concerns of the PDP.  The parties recommended, and the Court approved, the appointment of Cathleen Beltz as the Monitor.  (ECF No. 169).

Importantly, the Agreement also (1) addresses standards for relief under the Prison Litigation Reform Act, (2) states that the Defendants, by this Agreement, do not admit any fact or legal liability, or unlawful conduct, (3) provides for negotiated counsel fees and costs, (4) includes a release of the claims by Plaintiffs made in the Third Amended Complaint, and (5) sets termination dates and a process for enforcement, if necessary.

## III.     ARGUMENT

### A.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires approval of the Court.  This is a two-step process: first, the Court considers a motion for preliminary approval to ensure that no obvious problems exist with the settlement and to evaluate the parties' proposed plan for notifying class members; and, second, the Court considers a motion for final approval, after the class members have had the opportunity to receive notice and voice any objections.  *See Harlan v. Transworld Sys.*, 302 F.R.D. 319, 324

(E.D. Pa. 2014).  The standard for granting final approval of a class action settlement is set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002), which are discussed below.

B. <u>THE NOTICE TO CLASS MEMBERS WAS ADEQUATE</u>

Federal Rule of Civil Procedure 23(e) requires some form of notice of the settlement to class members.  The trial court has broad discretion in determining the timing and manner of the notice.  *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991).  In class actions involving prisons and other institutions, it is frequently impractical to provide individual notice to class members.  *See id.*  Instead, posting a notice at the institution is often the best way to inform class members of a pending settlement agreement.  *See id*; *see also Woods v. Marler*, No. 17-4443, 2018 U.S. Dist. LEXIS 170225, at *4-5 (E.D. Pa. Sept. 24, 2018) (approving class action settlement where pretrial detainees at the Federal Detention Center sought policies that would permit visitation by their minor children, noting the notice posted to the class permitted class members an opportunity to object); *Pastrana v. Lane*, No. 08-468, 2012 U.S. Dist. LEXIS 23737, at *3, *5 n.4, 10 (E.D. Pa. Feb. 24, 2012) (noting that the court ordered a notice to be posted in the housing units to inform halfway house residents about a class action settlement); *Inmates of Northumberland Cty. Prison v. Reish*, No. 08-345, 2011 U.S. Dist. LEXIS 46600, at *4-5 (M.D. Pa. April 29, 2011).

Here, notice was provided to the class by posting the Notice in all housing areas at PDP, at the law libraries in PDP, and on the PDP electronic communications systems (e.g., tablets).  *See* Exhibit C.  Plaintiffs' counsel provided copies of the Agreement upon request.

C.  THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Settlement Agreement meets the standards for final approval.  Federal Rule of Civil

Procedure 23(e) provides that "claims, issues, or defenses of a certified class may be settled,

voluntarily dismissed, or compromised only with the court's approval."  Prior to final approval,

Rule 23(e) directs that the following procedures apply to a proposed settlement:

> (1)    The court must provide direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)    If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)    The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> . . .
> (5)    Any class member may object to the proposal if it requires court approval under this subdivision (3); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Final approval of a class action settlement requires a finding by the Court that the

settlement is "fair, reasonable, and adequate."  *Ehreart v. Verizon Wireless*, 609 F.3d 590, 592

(3d Cir. 2010).  In *Girsh*, the Third Circuit outlined nine factors for district courts to consider

when determining whether a settlement is "fair, reasonable, and adequate."  The factors are:  (1)

the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through the trial; (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9)

the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation. *Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*,

495 F.2d 448, 463 (2d Cir. 1974)) (alterations omitted); *see also In re NFL Players Concussion*

*Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) (applying *Girsh* and *Prudential* factors).

Subsequently, in *In re Prudential Ins. Co.*, the Third Circuit expanded the criteria in

assessing a proposed settlement by including the following factors, when appropriate:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323; *see also In re Pet Food Products Liability Litig.*, 629 F.3d 333, 350-51 (2010).

1.   The *Girsh* Factors Weigh In Favor Of Settlement Approval

**a.   The complexity, expense and likely duration of the litigation**

The first *Girsh* factor weighs in favor of settlement approval.  This litigation involves the

PDP's response to the COVID-19 pandemic and alleged inhumane conditions at the

Philadelphia jails arising from a lack of staffing and other complicating factors.  Courts have

found litigation addressing policies and procedures at other prisons and jails to be sufficiently

complex to weigh in favor of settlement approval. *See, e.g., Woods*, 2018 U.S. Dist. LEXIS

170225, at *4 at n.3; *Williams v. City of Philadelphia*, No. 08-1979, 2011 U.S. Dist. LEXIS

87467, at *9 (E.D. Pa. Aug. 8, 2011); *Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist.

LEXIS 46600, at *2.

The litigation commenced over two years ago at the beginning of the COVID-19

pandemic.  Since then, the parties have engaged in significant informal and formal discovery,

including Defendants providing weekly reports on a variety of data, document production, and a deposition of PDP's chief of medical operations. Were the claims in this case to proceed, the parties would be required to conduct full-blown merits discovery. Further, the size of the class, the underlying claims addressing complex issues including medical care, and the extent of injunctive relief sought all contribute to the complexity of the case. Proving the unconstitutionality of the practices at issue here would be complex and expensive, requiring expert witnesses. Therefore, the first factor weighs in favor of settlement approval.

### b. The reaction of the class to the settlement

The Motion for Preliminary Approval of the settlement was filed on April 12, 2022 (ECF No. 165). Class members were instructed to mail any objections to Plaintiffs' counsel or Defendants' counsel. As of June 15, 2022, 4,114 people were incarcerated in PDP facilities. A total of 56 class members sent letters concerning the Settlement. Individuals incarcerated at Curran-Fromhold Correctional Facility ("CFCF") sent most of the individual letters, while one letter was sent from an individual housed at Alternative and Special Detention Unit – Central Unit ("ASDCU") on behalf of 20 other incarcerated people, who co-signed the letter. Individuals from all PDP facilities sent letters: Philadelphia Industrial Correctional Center ("PICC"), Riverside Correctional Facility ("RCF"), the Detention Center ("DC"), CFCF, ASDCU, and Mod-3. *See* Exhibit D (listing the number of individuals from each facility who submitted comments or objections and the topics of their comments or objections).

Many letters addressed what the authors asserted were the ongoing state of disrepair and unlivable conditions inside PDP facilities. Most of the letters, while not explicitly about the Settlement Agreement, addressed conditions that the Agreement is designed to ameliorate. For example, one individual housed at RCF asserted that two tablets—which are "never fully"

charged— are the only tablets available for the entire facility. This lack of access leads to violence, because, in the words of this individual, "it's like throwing a 'steak' in a cage full of hungry dogs, they're going to fight for it." This issue is specifically addressed in the Settlement Agreement. (ECF No. 165-2 at 2). Another individual at CFCF shared concerns over staffing, explaining that inadequate staffing is a persistent issue and that it leaves him and others feeling "helpless." This issue is also addressed by the Agreement. (ECF No. 165-2 at 1).

Very few individuals raised specific objections to the Settlement. One individual felt that the settlement was "anti-climactic" and "void of accountability," and that litigation could achieve longer-lasting change at PDP. Another incarcerated individual at PICC raised objections that are addressed by the Agreement—including objections regarding tablet access and call button remediations—but objected more generally to the lack of monetary damages. Finally, one more individual raised an objection regarding access to the law library, an issue that is also included in the Agreement.

It is significant that only 56 incarcerated individuals submitted objections or comments of any nature. A low number of objectors compared to the potential number of class members creates a strong presumption in favor of approving the settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001); *see also Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist. LEXIS 46600, at *9 (approving settlement where four comments were received out of 200 prisoners in the class and where none of the four objected to the terms of the settlement); *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (approving settlement where 3 formal objections were received from a potential class of 37,000).

Finally, Plaintiffs' counsel received at least one letter expressing support for the agreement. An individual who is housed at CFCF wrote that, "the settlement agreement is fair to

all that deserve [sic]."  Although not all the letters explicitly stated support for the settlement terms, the majority expressed general appreciation for, and belief in, the work that Plaintiffs' counsel have done and are doing, in this case.

### c.   The stage of the proceedings and the amount of discovery completed

This factor focuses upon the case development prior to the creation of a settlement agreement as a way for courts to examine the thoroughness of counsel's evaluation of the merits of a claim.  *In re Cendant Corp. Litig.,* 264 F.3d at 235.  The parties engaged in significant informal discovery and formal discovery tied to the hearing on Plaintiffs' Motion for Preliminary Injunction prior to the commencement of settlement negotiations.  Post-discovery settlements are more likely to be sufficiently informed about the fairness of a settlement.  *Boone*, 668 F. Supp. 2d at 712.  Here, the discovery process was extensive, including the weekly exchange of documents for over a year, formal discovery resulting in the exchange of hundreds more documents, an expert report, and the deposition of a PDP medical official.

Motion practice can also highlight the strengths and weaknesses of the case facts and arguments.  *See Pack v. Beyer*, No. 91-3709, 1995 U.S. Dist. LEXIS 19542, at *9 (D.N.J. Dec. 22, 1995).  In this case, motions to dismiss, motions for class certification, and motions for preliminary injunctions, were filed and responded to, further highlighting the key issues in the lawsuit.  The depth of discovery and motion practice, combined with the protracted pretrial stage of these proceedings, demonstrates a well-informed decision to settle this action.  Final approval of the Settlement Agreement would also save the expense of a trial.  Courts have held that cost savings weigh in favor of settlement approval.  *See Austin v. Penn. Dept. of Corr.*, 876 F. Supp. 1437, 1470-71 (E.D. Pa. 1995).

Finally, courts have recognized that,"[t]he professional judgment of counsel involved in the litigation is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985). The post-discovery stage of the proceedings, the significant economic impact of moving forward with trial, and the two-year pretrial litigation that has already occurred, all support final approval of the Settlement Agreement.

### d.  The risks of establishing liability

The risks of liability also weigh in favor of approval, though less strongly than other factors.  Like many prison civil rights cases that focus on conditions of confinement, this case involves uncertainty as to the relief to which the class would be entitled.  In this context, courts have found an increased the risk for plaintiffs.  *See, e.g. Boone*, 668 F. Supp. 2d at 710; *Delandro*, 2011 U.S. Dist. LEXIS 55249, at *31.  As one court stated, "there is no assurance that the relief would be greater or different than the relief provided" in the proposed agreement. *Harris v. Reeves*, 761 F. Supp. 382, 401 (E.D. Pa. 1991).

Defendants also have reason to avoid the uncertainties of litigation.  If Plaintiffs succeeded in establishing unconstitutional conditions, the Court would have significant "discretion regarding injunctive relief."  *See Harris v. Pernsley*, 654 F. Supp. 1042, 1051 (E.D. Pa. 1987).  By entering into the Settlement Agreement, Defendants have greater control in determining what terms they feel are most appropriate to manage PDP facilities.  Furthermore, if the class were to prevail, attorneys' fees awarded in accordance with 42 U.S.C. § 1988 could surpass the amount agreed upon.  *See id*. at 1052.  Thus, this factor weighs in favor of settlement approval.

### e.   The risks of establishing damages

Plaintiffs here do not seek damages on behalf of the class and instead seek solely injunctive relief.  Nevertheless, the risks of "demonstrating the propriety of an injunction," especially an injunction of a larger scale addressing an entire institution, are large. *Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist. LEXIS 46600, at *8; *see also Williams*, 2011 U.S. Dist. LEXIS 87467, at *14.  Therefore, this factor weighs in favor of approving the Settlement Agreement.

### f.   The risks of maintaining the class action through the trial

This factor is neutral, as, absent a decision by the Circuit on Defendant's petition to appeal the class certification decision, there are no indications that the class could not be maintained for the duration of the suit.  *See Boone*, 668 F. Supp. 2d at 712.  Courts in this circuit have continuously held that there is always some risk of decertification in any class action.  *In re Prudential Ins.*, 148 F.3d at 321.  Due to this presumption, a risk of decertification that is not any more substantial than the risk in any other class action does not weigh against settlement approval.  *Boone*, 668 F. Supp. at 712.  To the extent that the class is fluid, where individuals are entering and leaving the custody of PDP, that weighs in favor of settlement approval.  *See Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist. LEXIS 46600, at *9.

### g.   The seventh, eighth, and ninth *Girsh* factors do not apply

This action was certified under Rule 23(b)(2) for injunctive relief.  The seventh, eighth, and ninth factors articulated in *Girsh* deal with monetary judgments and settlement funds and therefore do not apply.  *See Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist. LEXIS 46600, at *9-10 (not applying these factors for a class action lawsuit with only injunctive relief claims).

Therefore, the totality of the *Girsh* factors weighs in favor of the Court's approval of the Settlement Agreement.

    2.  <u>The *Prudential* Factors Weigh In Favor Of Settlement Approval</u>

This is a class action under Rule 23(b)(2) for injunctive relief only.  Because the class does not seek damages, most of the factors set forth in *Prudential* do not apply.  *See Williams*, 2011 U.S. Dist. LEXIS 87467, at *14.  The only relevant factor is the reasonableness of the provision for attorneys' fees.  *Id.*

The parties have settled the claim for attorneys' fees and costs at an amount of $340,000, which is fair and reasonable.  The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that prevailing plaintiffs are entitled to claim reasonable attorneys' fees in civil rights cases, and "strong federal policy embodied in the Fees Act normally requires an award of fees to prevailing plaintiffs in civil rights actions, including those who have prevailed through settlement." *Evans v. Jeff D.*, 475 U.S. 717, 724-25 (1986).  The "initial estimate of a reasonable attorneys' fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.*  Even with attorney rates limited by the Prison Litigation Reform Act, the agreed-upon figure is a significant reduction in attorneys' fees compared to the fees that could be assessed through a fee petition due to the significant number of hours expended in the litigation.  This figure is also inclusive of costs.  The attorneys' fees here are comparable or are less than attorneys' fees agreed upon and approved in other analogous class action suits.  *See, e.g.*, *Inmates of Northumberland Cty. Prison*, 2011 U.S. Dist. LEXIS 46600 at *9 (approving class action settlement in prison litigation case and finding attorneys' fees of $300,000 to be fair and reasonable).  Furthermore, the fact that attorneys' fees would be paid to Plaintiffs' counsel was disclosed to the class in the Agreement itself as well as in the

Notice.  Therefore, the *Prudential* factors point towards the approval of the Settlement Agreement.

        3.   <u>The Settlement Agreement Is Fair, Reasonable, and Adequate</u>

The Settlement Agreement is fair, reasonable, and adequate. Upon implementation, it will provide relief to the approximately 4,100 people incarcerated in PDP facilities.  The Agreement does not provide preferential treatment; all members of the class will benefit equally from the changes that this lawsuit has prompted.  Further, the terms of this agreement will prevent these conditions from arising again, benefiting people incarcerated in PDP in the future.  The lawsuit sought only injunctive relief, so the absence of monetary damages should not raise any concerns. The attorneys' fees are reasonable and do not lessen the relief obtained by class members in any way.

Therefore, the settlement is fair, reasonable, and adequate and should be approved.

## IV.      CONCLUSION

For the reasons discussed above, the Court should grant final approval of the class action settlement.

Respectfully submitted,

*/s/ Su Ming Yeh*
Su Ming Yeh (PA 95111)
*/s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
*/s/ Sarah Bleiberg*
Sarah Bleiberg (PA 327951)
PENNSYLVANIA INSTITUTIONAL LAW
PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
(215)-925-2966
smyeh@pailp.org
mfeldman@pailp.org
sbleiberg@pailp.org

*/s/ David Rudovsky*
David Rudovsky (PA 15168)
*/s/ Susan M. Lin*
Susan Lin (PA 94184)
*/s/ Grace Harris*
Grace Harris (PA 328968)
*/s/ Jonathan H. Feinberg*
Jonathan H. Feinberg (PA 88227)
KAIRYS, RUDOVSKY, MESSING,
FEINBERG, & LIN, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
drudovsky@krlawphila.com
slin@krlawphila.com
gharis@krlawphila.com
jfeinberg@krlawphila.com

*/s Nia Holston*
Nia Holston (PA 327384)
*/s Rupalee Rashatwar*
Rupalee Rashatwar (FL 1011088)
*/s Bret Grote*
Bret Grote (PA 317273)
ABOLITIONIST LAW CENTER
PO Box 31857
Philadelphia, PA 19104
(412) 654-9070
nia@alcenter.org
rupalee@alcenter.org
bretgrote@abolitionistlawcenter.org

*/s/ Benjamin R. Barnett*
Benjamin R. Barnett (PA 90752)
*/s/ Will W. Sachse*
Will W. Sachse (PA 84097)
*/s/ Mary H. Kim*
Mary H. Kim*
*/s/ Nicolas A. Novy*
Nicolas A. Novy (PA 319499)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2496
Ben.Barnett@dechert.com
Will.Sachse@dechert.com
Mary.Kim@dechert.com
Nicolas.Novy@dechert.com

* indicates counsel who will seek admission
or *pro hac vice* admission

*Attorneys for Plaintiffs*

15

*/s/ Craig M. Straw*
Craig M. Straw, First Deputy City Solicitor (PA78212)
*/s/ Anne B. Taylor*
Anne B. Taylor, Chief Deputy City Solicitor (PA 206057)
*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal, Deputy City Solicitor (PA 329676)
CITY OF PHILADELPHIA DEPARTMENT OF LAW
1515 Arch Street
Philadelphia, PA 19102-1595
(215) 683-5442
craig.straw@phila.gov
anne.taylor@phila.gov
danielle.rosenthal@phila.gov

*Attorneys for Defendants*


DATE: June 22, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS REMICK, et al.,** *on behalf of* *themselves and all others similarly situated,* | : | **No. 2:20-cv-01959-BMS** |
| | : | |
| **Plaintiffs-Petitioners,** | : | |
| | : | **Judge Berle M. Schiller** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA; and** **BLANCHE CARNEY, in her official** **capacity as Commissioner of Prisons,** | : : : | |
| | : | |
| Defendants-Respondents. | | |

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew A. Feldman, hereby certify that a true and correct copy of the Joint Motion for Preliminary Approval of Class Action Settlement was served upon the following via ECF on June 22, 2022.

> Craig M. Straw
> Anne B. Taylor
> Danielle Rosenthal
> City of Philadelphia Department of Law
> 1515 Arch Street, 14th Floor
> Philadelphia, PA 19102-1595

Respectfully submitted,

*/s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
(215) 925-2966
mfeldman@yahoo.com

DATE: June 22, 2022

17