IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS REMICK, et al., on behalf of themselves and all others similarly situated, | : <br> :    CIVIL ACTION <br> : |
| Plaintiffs-Petitioners, | : <br> : <br> : |
| v. | : <br> : |
| CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons, | : <br> : <br> : <br> :    No. 20-1959 |
| Defendants-Respondents. | : |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                               **July 12, 2022**

      Before the Court is the parties' Joint Motion for Final Approval of Class Action Settlement (the "Joint Motion"). (ECF No. 173.) Following more than two years of litigation, Plaintiffs—a class of persons who are currently or will in the future be confined in the Philadelphia Department of Prisons ("PDP")—and Defendants—the City of Philadelphia ("City") and Commissioner of Prisons Blanche Carney—entered into arm's length settlement negotiations that resulted in the execution of a global settlement agreement (the "Settlement Agreement"). The Court previously granted preliminary approval of the Settlement Agreement on April 13, 2022. (ECF No. 166.) After providing notice of the Settlement Agreement to class members, only one legitimate objection was submitted. A fairness hearing was held on July 6, 2022, at which counsel for both parties appeared and no further objections were made. For the reasons that follow, the Joint Motion is granted and the Settlement Agreement is approved.

    **I.**     **BACKGROUND**

      The Court previously recounted the facts of this case in considerable detail and therefore

1

will not repeat them here. *See Remick v. City of Phila.*, Civ. A. No. 20-1959, 2022 WL 742707, at *1-3 (E.D. Pa. Mar. 11, 2022). In brief, on April 20, 2020, Plaintiffs filed suit against Defendants to compel them "to protect individuals incarcerated in the PDP from the risks of serious harm they face from the twin dangers of COVID-19 and prolonged isolation in their cells." (ECF No. 132 at 6 (citing ECF No. 1).) Over the ensuing two years, *inter alia*, the Court issued numerous orders relating to the PDP's COVID-19 protocols and jail conditions, (*see, e.g.*, ECF Nos. 35, 55, 58, 59, 62, 63, 70, 74, 92, 93); Plaintiffs filed two contested motions for contempt, (ECF Nos. 71, 73, 113, 119, 124), both of which were resolved via settlement; and Defendants filed a contested motion to vacate one of the Court's orders, (ECF Nos. 118, 127), which was also resolved via settlement. All the while, the Court and the parties held biweekly status conferences, and the parties regularly submitted status reports, declarations from incarcerated persons, certifications from prison staff, and information relating to COVID-19 infection and vaccination rates at PDP facilities.

More recently, on January 7, 2022, Plaintiffs filed their Motion for Preliminary Injunction. (ECF No. 128.) Plaintiffs thereafter filed their Third Amended Motion to Certify Class on January 28, 2022, (ECF No. 132), and Third Amended Complaint on February 22, 2022. (ECF No. 147.) Defendants moved to dismiss the Third Amended Complaint on February 25, 2022. (ECF No. 148.) On March 11, 2022, the Court certified a 23(b)(2) class. (ECF Nos. 152-53.) The class comprises "[a]ll persons who are currently or will be in the future confined in the [PDP], and are or will be subjected to illegal or unconstitutional conditions of confinement as a result of policies and restrictions implemented in response to the COVID-19 pandemic, and the PDP's staffing shortage." *Remick*, 2022 WL 742707, at *5. The Court scheduled a hearing on Plaintiffs' preliminary injunction motion for March 29, 2022.

While these motions were pending, the parties entered into arm's length settlement

negotiations. On March 28, 2022, the Court rescheduled the preliminary injunction hearing for April 25 after the parties informed the Court of their initial successes. (ECF No. 164.) Two weeks later, on April 12, 2022, the parties submitted a joint motion for the preliminary approval of the Settlement Agreement. (ECF No. 165.) The Court preliminarily approved the Settlement Agreement on April 13, 2022 and scheduled a fairness hearing for July 6, 2022. (ECF No. 166.) During the fairness hearing, counsel for both Plaintiffs and Defendants further voiced their approval of the Settlement Agreement.

Under the terms of the Settlement Agreement, the City will: (1) implement measures to enhance the hiring and retention of correctional officers, including by issuing signing and retention bonuses; (2) provide incarcerated persons with greater amounts of out-of-cell time on a schedule with graduated increases; (3) increase capacity for in-person visits and develop a plan for return to pre-pandemic programming; (4) continue to ensure adequate and timely medical and mental health treatment, including by expanding mental health programming and reducing backlogs for medical appointments; (5) ensure compliance with individuals' due process rights during disciplinary proceedings; (6) expand phone and tablet access; (7) continue the implementation of a lock replacement program and implement refresher training on the emergency call button system; (8) continue to follow COVID-19-related protocols to ensure incarcerated persons are available for court and meetings with attorneys, including by testing incarcerated persons before court appearances; and (9) provide refresher training on the PDP's use of force policy. (ECF No. 173 Ex. A.) Defendants also agreed to withdraw their Petition for Permission to Appeal this Court's Class Certification Order, which is currently pending in the Third Circuit Court of Appeals. (*Id.*)

The Settlement Agreement further provides for the Court's appointment of a monitor (the "Monitor") to assist the Court and the parties in implementing the Settlement Agreement for a

period of two years. (*Id.*) The parties recommended, and the Court approved and appointed, Cathleen Beltz as the Monitor on May 25, 2022. (ECF No. 169.)

## II. LEGAL STANDARD

The law encourages the settlement of civil actions—particularly class actions—in federal courts. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). Nevertheless, the decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). "Under [Fed. R. Civ. P. 23(e)] the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Gen. Motors*, 55 F.3d at 785. "The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). A court may only issue its approval upon a finding that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

To guide district courts considering approval of class action settlements, the Third Circuit has adopted a nine-factor test, referred to as the *Girsh* test. Under the *Girsh* test, the Court considers: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

The Third Circuit subsequently expanded upon the *Girsh* factors to enumerate several permissive factors, known as the *Prudential* factors, including: (1) the maturity of the underlying substantive issues; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential Ins. Co.*, 148 F.3d 283, 323 (3d Cir. 1998).

### III. DISCUSSION

Here, the Court finds that the Settlement Agreement is fair, reasonable, and adequate. It addresses the relevant *Girsh* and *Prudential* factors in turn.

#### A. Presumption of Fairness

At the outset, the Court will afford the Settlement Agreement a presumption of fairness. The Third Circuit applies "an initial presumption of fairness in reviewing a class settlement when: (1) the negotiations occurred at arms [sic] length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016). The Settlement Agreement fulfills all four factors.

First, the parties engaged in arm's length negotiations. The Court was apprised of the parties' settlement progress during several of its biweekly conference calls with the parties. Informal settlement discussions occurred between the parties throughout the course of the

5

litigation. Progress accelerated in February and March 2022 as the preliminary injunction hearing approached. Between then and mid-April 2022, the parties partook in frequent meetings, reaching 95% completion of a settlement agreement by the end of March and hammering out the remaining details over the ensuing weeks.

Second, there was sufficient discovery. The parties have engaged in significant informal and formal discovery, including: Defendants providing Plaintiffs and the Court with weekly reports concerning, *e.g.*, staff absenteeism, out-of-cell time, incarcerated persons' access to court hearings, COVID-19 positivity rates among both staff and incarcerated persons, and vaccination rates among both staff and incarcerated persons; the parties engaging in document production; and Plaintiffs deposing the PDP's Chief of Medical Operations.

Third, both parties are represented by reasonable counsel possessing significant experience in prisoner rights litigation and class actions. Class counsel in particular consists of two non-profit organizations, the Pennsylvania Institutional Law Project and the Abolitionist Law Center, in addition to the law firm Kairys, Rudovsky, Messing, Feinberg & Lin LLP, all of which are regularly on the forefront of the most pressing civil rights issues in both our state and nation. The class is also represented by Dechert LLP, a highly revered global law firm based in Philadelphia with extensive complex litigation experience.

Fourth, and as discussed further below, counsel only received one objection to the Settlement Agreement.

The Court therefore concludes that a presumption of fairness is warranted here.

### B.     The *Girsh* Factors

The Court finds that the relevant *Girsh* factors, taken together, weigh in favor of approval of the Settlement Agreement.

1. <u>The complexity, expense, and likely duration of the litigation</u>

The Court finds that the first *Girsh* factor weighs in favor of settlement approval. The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *Warfarin*, 391 F.3d at 535-36. Here, the litigation has already spanned more than two years; were the claims in this case to proceed (notwithstanding the Court's decision on Defendants' pending motion to dismiss), the parties would be required to conduct full-scale, exhaustive, and costly merits discovery. Further, the size of the class, the underlying claims addressing complex issues such as medical care—necessitating expert witnesses—and the extent of the injunctive relief sought all contribute to the complexity of this case. Courts in this Circuit have historically found comparable litigation addressing prison policies and procedures to be sufficiently complex to weigh in favor of settlement approval. *See, e.g.*, *Woods v. Marler*, Civ. A. No. 17-4443, 2018 WL 11355449, at *2 n.3 (E.D. Pa. Sept. 24, 2018); *Williams v. City of Phila.*, Civ. A. No. 08-1979, 2011 WL 3471261, at *3 (E.D. Pa. Aug. 8, 2011); *Inmates of Northumberland Cnty. Prison v. Reish*, Civ. A. No. 08-345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011).

Thus, the first factor weighs in favor of settlement approval.

2. <u>The reaction of the class to the settlement</u>

The Court finds that the second *Girsh* factor weighs in favor of settlement approval. The second *Girsh* factor calls for the Court to "attempt[] to gauge whether members of the class support the settlement by considering the number of objectors . . . and the substance of any objection." *Sullivan v. DB Inves., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (quoting *Prudential*, 148 F.3d at 318) (quotation marks omitted). Here, counsel for the parties received letters regarding the Settlement Agreement from fifty-six of the approximately 4,100 persons incarcerated at PDP facilities. Following a review of the letters, the Court has determined that only one constitutes an actual

7

objection to the Settlement Agreement. The author of this letter felt as though litigation might achieve longer-lasting change at PDP than settlement. The author, however, justified this contention by citing to issues that are already addressed by the Settlement Agreement.

The remainder of the letters discussed what the authors asserted is the ongoing state of disrepair and unlivable conditions at PDP facilities, which the Settlement Agreement is designed to ameliorate. Some of those letters also expressed disappointment at not receiving monetary damages, but a Rule 23(b)(2) class is not the appropriate vehicle to pursue those damages. A low number of objectors compared to the potential number of class members creates a strong presumption in favor of approving a settlement. *See Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *3 (approving settlement agreement where four comments were received out of 200 class members and where none of the four objected to the terms of the settlement); *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (approving settlement agreement where three objections were received from a potential class of 37,000 members).

Thus, the second factor weighs in favor of settlement approval.

### 3. The stage of the proceedings and the amount of discovery completed

The Court finds that the third *Girsh* factor weighs in favor of settlement approval. The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.

Here, the extensiveness of discovery and motion practice, coupled with the protracted pretrial stage of these proceedings, demonstrates a well-informed decision to settle this action. This case has developed considerably over the past two years. The parties engaged in significant discovery, both in connection with Plaintiffs' motion for preliminary injunction and Court orders

mandating the weekly exchange of data and reports on PDP conditions. The parties have also engaged in extensive motion practice, filing and responding to multiple motions for preliminary injunctions, motions for class certification, and motions for contempt, as well as a motion to dismiss and a motion to compel. *See Pack v. Beyer*, Civ. A. No. 91-3709, 1995 WL 775360, at *4 (D.N.J. Dec. 22, 1995) (finding that the "substantial discovery and motion practice . . . conducted" signifies that "the parties have a clear understanding of the facts underlying this case, as well as the strengths and weaknesses of the arguments" and "that the settlement has been fully and fairly negotiated").

Thus, the third factor weighs in favor of settlement approval.

### 4. The risks of establishing liability

The Court finds that the fourth *Girsh* factor weighs slightly in favor of settlement approval. In examining this factor, the Court "give[s] credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814.

Here, the Court finds that Settlement Agreement's comprehensiveness in providing relief to class members does away with many of the risks inherent in a complex prison civil rights litigation of this sort. Although, in weighing acceptance of the Settlement Agreement with the prospect of litigation, "there is no assurance that the relief would be greater or different than the relief provided by [the proposed agreement]," *Harris v. Reeves*, 761 F. Supp. 382, 401 (E.D. Pa. 1991), the Court joins the general sentiment of Judge Surrick, who expressed that "[i]f one were

9

to look at the 40-year history of prison litigation involving conditions in the [Philadelphia prison system], one could conclude that Plaintiffs face no risk in establishing liability." *Williams*, 2011 WL 3471261, at *4. In any event, the Settlement Agreement provides relief for all of the issues discussed by the parties and the Court over the long course of this litigation.[1]

Thus, the fourth factor weighs slightly in favor of settlement approval.

### 5. The risk of establishing damages

The Court finds that the fifth *Girsh* factor weighs in favor of settlement approval. Pursuant this factor, the Court balances "the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. Although this class does not seek monetary damages, courts considering this *Girsh* factor in connection with proposed settlements for 23(b)(2) classes have noted that "the risks inherent in seeking injunctive relief are always significant." *Williams*, 2011 WL 3471261, at *4; *see also Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *3 ("With respect to the fifth factor, the risks of establishing damages, we note that the parties do not seek damages but rather seek declaratory and injunctive relief. The risks of demonstrating the propriety of an injunction—especially an injunction of such a grand scale as would be necessary here (and is reflected in the Proposed Settlement)—are great.").

Thus, the fifth factor weighs in favor of settlement approval.

### 6. The risks of maintaining the class action through trial

The Court finds that the sixth *Girsh* factor is neutral with respect to settlement approval.

---

[1] The Court also acknowledges that Defendants have reason to avoid the uncertainties of litigation: if Plaintiffs succeeded in establishing liability, the Court would have significant discretion in fashioning injunctive relief. The Settlement Agreement affords Defendants greater control in determining what terms they feel are most appropriate to manage PDP facilities.

The sixth Girsh factor considers the risks of maintaining a class action throughout the litigation. Fed. R. Civ. P. 23 allows district courts to "decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Prudential*, 148 F.3d at 321. Thus, "[t]here will always be a 'risk' or possibility of decertification." *Id.* But beyond the invariable risk of decertification, and absent a decision by the Third Circuit on Defendants' petition appealing this Court's certification decision, neither party points to any specific reason that decertification is likely to occur here. To the extent individuals continuously enter and leave PDP custody, the fluidity of the class weighs in favor of settlement approval. Overall, however, the Court agrees with the parties that this factor is neutral.

7. The seventh, eighth, and ninth *Girsh* factors

This action was certified pursuant to Fed. R. Civ. P. 23(b)(2) for injunctive relief only. The seventh, eighth, and ninth *Girsh* factors involve monetary judgments and settlement funds. They therefore do not apply here. *See Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *3.

Thus, the totality of the *Girsh* factors weigh in favor of the Court's approval of the Settlement Agreement.

C. **The *Prudential* Factors**

The Court finds that the applicable *Prudential* factors weigh in favor of settlement approval. The factors "identified in *Prudential* are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). Since this class does not seek monetary damages, only two factors are relevant here: the maturity of the underlying substantive issues, and whether any provisions for attorneys' fees are reasonable. First, at the time the Settlement

Agreement was executed, and as discussed above, extensive discovery and motion practice had been completed, meaning that the "underlying substantive issues" were "matur[e]" and class counsel had a strong "ability to assess the probable outcome of a trial on the merits." *See Prudential*, 148 F.3d at 323.

Second, the attorneys' fees and costs provided for in the Settlement Agreement are fair and reasonable. The parties have settled their claim for attorneys' fees and costs for $340,000.00. The Civil Rights Attorneys' Fees Awards Act of 1976 ("Fees Act") provides that prevailing plaintiffs are entitled to claim reasonable attorneys' fees in civil rights cases, and "strong federal policy embodied in the Fees Act normally requires an award of fees to prevailing plaintiffs in civil rights actions, including those who have prevailed through settlement." *Evans v. Jeff D.*, 475 U.S. 717, 724-25 (1986); *see also* 42 U.S.C. § 1988. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)) (quotation marks omitted). The parties both represent that, "[e]ven with attorney rates limited by the Prison Litigation Reform Act, the agreed-upon figure is a significant reduction in attorneys' fees compared to the fees that could be assessed through a fee petition due to the significant number of hours expended in the litigation." (ECF No. 173 at 17.) Further, the attorneys' fees here are comparable to attorneys' fees agreed upon and approved in other analogous class action suits. *See Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *3 (finding attorneys' fees of $300,000 to be fair and reasonable).

Therefore, the totality of the relevant *Prudential* factors weighs in favor of the Court's approval of the Settlement Agreement.

### D. Notice to Class Members

Finally, the Court finds that notice of the Settlement Agreement provided to class members was adequate. Fed. R. Civ. P. 23(e) requires that notice of settlement be afforded to class members. The court has broad discretion in determining the timing and manner of the notice. *Harris*, 761 F. Supp. at 393. Here, notice was provided to class members by posting information regarding the Settlement Agreement in all PDP housing areas, at the law libraries, and on PDP tablets. (*See* ECF No. 173 Exs. B-C.) Plaintiffs' counsel also provided class members with copies of the Settlement Agreement upon request. This method of providing notice comports with that approved by courts in analogous litigations. The Court acknowledges the impractical nature of providing individual notice to class members, since the class comprises many thousands of members, as well as many unidentifiable members, *i.e.*, individuals who will be incarcerated at PDP facilities in the future. *See Harris*, 761 F. Supp. at 393. Accordingly, courts in this Circuit have widely recognized that posting notices at prison facilities is the best way to inform class members of a pending settlement agreement. *See, e.g.*, *id.*; *Woods v. Marler*, Civ. A. No. 17-4443, 2018 WL 11355449, at *1-2 (E.D. Pa. Sept. 24, 2018); *Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *2. That was done here.

Therefore, adequate notice was provided to class members pursuant to Fed. R. Civ. P. 23(e).

### IV. CONCLUSION

In sum, the Court finds that a balancing of the relevant *Girsh* and *Prudential* factors weighs heavily in favor of approval of the Settlement Agreement. It is a vast understatement to say that this litigation was toilsome and trying—both in terms of workload and emotional taxation, given the gravity of the issues facing class members—forcing counsel to navigate through uncharted and

unprecedented times as the COVID-19 pandemic gripped the PDP. While it is certainly too soon to declare the COVID-19 pandemic "over," the Court genuinely applauds counsel and their dexterous work at bringing the formal components of this litigation to a close. It is apparent that the parties have a plan in place to confront the, at times, unfathomably harrowing conditions at the PDP. The Court is further comforted by the appointment of Ms. Beltz—as skillful and experienced as they come—as the Monitor, and the Court looks forward to working with her to implement the Settlement Agreement and actively keep tabs on the PDP over the next few years. The Settlement Agreement also provides an avenue for Plaintiffs to return to this Court should conditions at PDP stagnate or deteriorate.

For the reasons stated above, the Court is satisfied that the Settlement Agreement is fair, reasonable, and adequate. The Court therefore grants the Joint Motion and approves the Settlement Agreement. An Order consistent with this Memorandum will be docketed separately.