IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS REMICK, et al.,          CIVIL ACTION
     Plaintiffs,

      v.             #20-1959

CITY OF PHILADELPHIA and
BLANCHE CARNEY, Commissioner,
     Defendants.

## MOTION TO INTERVENE, FOR CONTEMPT AND FOR EXTRAORDINARY CLASS MEMBER SUPPLEMENTATION ⟨TEMPORARY RESTRAINING ORDER⟩

Here comes Class Member Ralph W. McClain, Jr., pro se, moving to intervene pursuant to Rule 23(d), Fed. R. Civ. P., for contempt proceedings for consent decree noncompliances pursuant to Rule 70(e), Fed. R. Civ. P., and for issue of temporary restraining order pursuant to Rule 65(b), Fed. R. Civ. P.

WHEREFORE, Class Member Plaintiff McClain asks that the Court permit him intervenor litigant status in this case, allow him to prosecute consent decree noncompliance contempt claims, and for the Court to protect him by issuing requested temporary restraining order, as indicated and supported by the attached declaration and

(1)

memorandum of law

Respectfully submitted,

Ralph W. McClain, Jr.
Class Member Plaintiff-Pro se
#814451, C.F.C.F.
7901 State Road
Philadelphia, PA 19136

Date: 8/9/23

(2) (1)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS REMICK, et al.,          CIVIL ACTION
          Plaintiffs,

          v.                    #20-1959

CITY OF PHILADELPHIA and
BLANCHE CARNEY, Commissioner;
          Defendants.

DECLARATION IN SUPPORT OF MOTION TO
INTERVENE, FOR CONTEMPT AND EXTRAORDINARY
CLASS MEMBER SUPPLEMENTATION
<TEMPORARY RESTRAINING ORDER>

I, Ralph W. McClain, Jr., states the following under
penalty of perjury:

    1. I am a class member plaintiff in this
case. I make this declaration in support of
my Motion to Intervene, for Contempt and
Extraordinary Class Member Supplementation.

    2. I am currently a pretrial detainee
in the Philadelphia Department of Prisons (PDP)
custody at Curren-Fromhold Correctional Facility
(CFCF), where I have been incarcerated
since being transferred from the Pennsylvania
Department of Corrections (DOC), after maxing

(1)

out 22 years of state prison sentences, on 5/10/23.

3. I am known classified as being "seriously mentally ill," have an extensive history of psychiatric hospitalizations dating back over 30 years, and am diagnosed with bipolar schizophrenia schizoaffective disorder, Post Traumatic Stress Disorder and Anti-Social Personality Disorder.

4. Prior to transfer to the PDP from the DOC on 5/10/23, I was being succesfully treated for my schizoaffective disorder and PTSD with prescription psychotropic medications Latuda and Doxepin since 2021.

5. Though the DOC transfered me with a 30 days supply of my Latuda and Doxepin prescriptions, upon my PDP intake on 5/11/23 I was told that I would no longer be able to get the Latuda and Doxepin because they are prohibited by the PDP and are not on the allowed to be prescribed medications "list."

6. Soon after nolonger getting my Latuda and Doxepin I began to experience daily auditory and textile hallucinations, extreme paranoia and anxiety, and begun to sleep very little or not

(2) (1)

at all.

7.   I have submitted numerous grievances and requests to staff showing that I need my Latuda and Doxepin back and asking for psychotherapy for my suicidal feelings and other psychological symptoms of my schizoaffective disorder (including depression and delusions), and have consistantly been denied return to treatment with Latuda and Doxepin and regular psychotherapy sessions.

8.   My being denied continuity of psychiatrically prescribed Latuda and Doxepin, and psychotherapy, by PDP mental health treatment staff amounts to non-compliance with the April 2022 Settlement Agreement in this case (see condition #5, "Defendants shall provide adequate and timely medical and mental health treatment to all incarcerated persons").

9.   I have an enlarged prostate BPH diagnosis, which I have been taking medication for for over 10 years.

10.   I submitted several sick call requests due to genitourinary complications symptoms from my prostate problem and have been told I would be seen by a "provider" for examination and treatment 2 months

(3)

ago (on or about 6/18) and haven't seen the "provider" for my prostate yet.

11. I also have complained to medical for other genitourinary issues, for urology treatment, including testicular pain and swelling and erectile problems, and I was told I would be scheduled for an ultrasound 2 months ago (on or about 6/21) and haven't been called for the ultrasound yet.

12. The delays in my being seen for urology treatment amounts to non-compliance with the April 2022 settlement Agreement in this case (see condition #5, "Defendants shall provide adequate and timely medical and mental health treatment to all incarcerated persons").

13. I am the pro se plaintiff in another pending civil action against PDP officials and the City of Philadelphia, McClain v. Hilty, et al., E.D. Pa. #22-1728-NIQA, and 4 other federal prisoners' civil rights 1983 lawsuits: McClain v. Shaylor, et al., E.D. Pa. #19-5148; McClain v. PaDOC, et al., M.D. Pa. #19-1951; McClain v. Hoover, et al., M.D. Pa. #21-992; and, McClain v. Morris, et al., W.D.

(4)

Pa. #22-958; as well as 2 state court prisoners' civil rights 1983 cases: McClain v. Mushtaq, et al., Cumberland Co. #2022-5564; and, McClain v. Harry, et al., Commw. Ct. #44 M.D. 2023.

14.   I was denied all pretrial detainee criminal defendant constitutional rights, railroaded and wrongfully convicted of Stalking charges that I'm innocent of committing, while last in PDP custody from 5/10/17 to 11/1/18, by way of broad conspiracy and malicious prosecutions behested by the Community College of Philadelphia (CCP) out of retaliation against me for my Title IX student hostile learning environment sexual harassment complaints against CCP's Re-entry Support Project female faculty members who were engaging in sexual relationships with targeted students with criminal records and histories of incarceration, and for my filing federal suit against CCP professor Tara Timberman in March of 2017 (see McClain v. Timberman, E.D. Pa. #17-1304).

15.   I am currently pro se appellant in the Superior Court of Pennsylvania for my 2 wrongful convictions from 2018 (see Commonwealth v. McClain, PA Super. #1239 EDA 2022).

16.   While in quarantine from 5/12/23 to 5/29/23

(5)

(~~at~~ D1p4 at CFCF) I wasn't allowed to use the law library and was told "there's no law library on quarantine."

17.   While in pre-population (A1p1 at CFCF) from 5/29/23 to 6/11/23 I was allowed to use the law library every weekday.

18.   I moved from A1p1 pre-population to D1p4 general population on 6/11/23 and have only been allowed to use the law library for one hour each time on four days since — 6/14, 7/5, 7/12 and 7/28 — because all the other three times weekly scheduled law library periods for D1p4 was cancelled by officers.

19.   Law library being cancelled ~~XXXX~~, 20 out of 24 scheduled times, 2-3 weeks straight at a time, causing me to rarely and seldomly be able to use the law library, amounts to non-compliance with the April 2022 Settlement Agreement in this case (see condition #7, "PDP will continue to provide law library access for all incarcerated individuals".

20.   On 7/13/23 CFCF Deputy Butler came to speak to me on D1p4 and told me that a woman called the prison and said that I threatened to rape her in a letter that

(6)

she recieved from me in the mail and that, if I mailed the woman who called anything else, I would be prosecuted for federal offenses and no longer allowed to send out any mail.

21. Deputy Butler refused to tell me the name of the woman who called the prison and said that I threatened to rape her.

22. I know for a fact that I did not send out any written threats in the mail from CFCF to anyone.

23. I did not recieve any misconduct report nor disciplinary hearing for the allegedly threatening letter mailed out by me from CFCF that Deputy Butler spoke to me about on 7/13/23.

24. Then on 7/14/23 my inmate phone account was deactivated so I couldn't use the phones.

25. After I complained, on 7/15/23 my phone calls were turned back on.

26. On 7/16/23, I submitted a formal grievance against Deputy Butler for retaliation in violation of my First Amendment rights for cutting my phone off due to an allegedly threatening letter that I supposedly mailed

(7)

out from CFCF - knowing that I mailed no threatening letters to anyone.

27. On 7/19/23, I mailed a civil complaint to the Philadelphia Court of Common Pleas for filing naming Deputy Butler and various other PDP prison officials, and the City of Philadelphia, as defendants.

28. On 7/25/23, I mailed a letter with 5 new grievances to PDP Commissioner Blanche Carney telling her, "(CFCF officers) are not responding to ones I put in the grievance boxes for months, nor to ones I entered on the tablets."

29. The next day, 7/26/23, Deputy Gray came to D1p4 with Deputy Butler and Lt. Alderman and told me that they had the grievances I put in the mail addressed to Commissioner Carney the day before and that they were beginning to address all the grievances ~~that~~ ~~~~ I had submitted since 5/16/23 (appx. 20 plus the 5 from 7/25/23).

30. The next day, 7/27/23, my phone account was again deactivated.

31. On 7/29/23, Lt. Alderman told me she spoke to Deputy Butler and was told that my phone was cut off due to a "court order."

(8)

32. I then realized, coincidentally, that I had not recieved any mail since before 7/13/23 when Deputy Butler spoke to me claiming that I mailed out a threatening letter.

33. I send out mail, regularly, on a daily basis and usually get mail (mostly legal mail) 2-3 days per week.

34. Prior to my phone account being turned off on 7/27/23, I spoke to 3 attornys who informed me that mail that I put in the prison mail box to them, that they should have recieved by then, was not recieved by them, and also to the Superior Court's Clerk's office who said I was mailed a per curiam Superior Court Order on 6/30/23 that I should have recieved yet still haven't gotten.

35. It is obvious to me that my mail is being held by CFCF and PDP prison officials (incoming and outgoing).

36. I have been requesting to know who issued the supposed "court order," its date, and what exactly it says, since I was first informed about it on 7/29/23, and have been told that I can't be shown it or told what exactly it says on it due to confidentiality.

(9)

37.   My pending federal lawsuit, McClain v. Lt.
Hilty, et al., suing PDP prison officials and the
City of Philadelphia, involves Philadelphia Mu-
nicipal Court (M.C.) orders from 2017 which
fraudulently caused PDP officials to seize
all of my outgoing pretrial detainee mail
for over a year and then destroy all of
it after I was forced to plead guilty by
conspiracy and coercion and wrongfully con-
victed in October of 2018.

38.   I believe that Deputy Butler is
again refering to those illegitimate 2017
M.C. orders (from Judge Tracey Brandeis-
Roman).

39.   Deputy Butler, and other PDP of-
ficials withholding delivery of my incoming
and outgoing pretrial detainee prisoner mail
due to allegations that I mailed a threat-
ening letter to somebody, where no miscon-
duct report was issued to me detailing who
I'm supposed to have threatened and what
exactly the threat said/read, and no dis-
ciplinary hearing was conducted with me for
the matter, amounts to non-compliance with
the April 2022 Settlement Agreement in this
case (see condition #8, "disciplinary proceedings

(10)

at the PDP shall be held in accordance with
established due process rights, including the
presence of the incarcerated person who is the
subject of the proceeding"].

40. I have been fighting more compelling
suicidal ideations since prison officials
turned my phone calls off and I realized
they have been holding all of my mail.

41. On 8/7/23 I was moved to the
highest security Special Management unit,
A1p3, and placed on solitary confinement.

42. It is now 8/9/23 (1:00 p.m.) and
I have yet to recieve anything informing me
of the official reason why I was moved
from general population to "the hole" (no
misconduct report issued) and nobody has
otherwise informed me of exactly why I am
now placed ~~in misconduct~~ in Special Management
on solitary confinement.

43. I stopped eating and declared
hungerstrike on 8/1/23 due to PDP officials'
excessive violations of my pretrial detainee
prisoner civil rights.

44. I am suffering irreparable harm,
seperable from the majority of class members,
in the form of continued psychological suffering

(11)

and pain from anxiety of pro se plaintiff federal civil actions litigations ongoing for years and wrongful conviction appeals and increased risk of not being able to prosecute my lawsuits for millions of dollars or defend myself for my freedom in criminal cases— I am also SMI and at increased risk of suicide ("Seriously Mentally Ill").

45.    I am suffering more irreparable harm in the form of continued physical and mental pain and suffering and an increased risk that my genitals will never be restored to practical functioning and usefulness.

46.    Defendants' non-compliance with the various conditions of the consent decree order and Settlement Agreement in this case has substantially caused injury to me as a class member plaintiff of this action, in manners uniquely applicable to me individually and seperable from the majority of class members, and I should be allowed to intervene as an extraordinary class member for supplemental claims and decrees narrowed to my individual interests consistant with the claims presented, and decrees issued, in this

(12)

action for class members and sub-class members as a whole.

47.   For the reasons set forth in the memorandum of law filed with this motion and declaration, I am entitled to a temporary restraining order requiring the defendants to arrange for my continuity of psychiatric treatment with prescription Latuda and Doxepin, my being provided with weekly psychotherapy, my being examined by a qualified urology specialist, my being provided daily law library access, for my inmate phone account to be reactivated and my being allowed to make phone calls daily, and for my incoming mail to be delivered to me and my outgoing mail to be turned over to the U.S. Postal Service.

48.   Prior to filing this motion I wrote and/or spoke to class counsel, who showed little to no interest in helping me assert my rights under the consent decree and pursue Independent noncompliance contempt claims and supplemental § 1983 claims (Including Su Ming Yeh, Susan Man Yi Lin, Sarah Bleiberg, Matthew Feldman and Grace Harris).

(13)

49. For the foregoing reasons the Court should grant my motion in all respects.

I declare under penalty of perjury that the foregoing is true and correct to the best of my know-ledge, information and beliefs, pursuant to 28 U.S.C. §1746.

Date: 8/9/23

By: Ralph W. McClain, Jr.
Declarant
#814451, CFCF
7901 State Road
Philadelphia, PA 19136

(14)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS REMICK, et al.,                  CIVIL ACTION
         Plaintiffs,

         v.                             #20-1959

CITY OF PHILADELPHIA and
BLANCHE CARNEY, Commissioner,
         Defendants.

MEMORANDUM OF LAW IN SUPPORT OF CLASS
MEMBER MCCLAIN'S MOTION TO INTERVENE,
FOR CONTEMPT AND EXTRAORDINARY CLASS
MEMBER SUPPLEMENTATION
⟨TEMPORARY RESTRAINING ORDER⟩

Statement of the Case

This is a class action bought in 2020 by named plaintiffs for "injunctive relief that would require Defendants to comply with recognized public health and safety measures to prevent the spread of (COVID-19) for those confined at jails and prisons, and to ensure adequate out-of-cell time; proper medical care; access to courts; access to counsel, legal mail, and law libraries; due process in disciplinary proceedings; and protection from violence from correctional officers and other incarcerated persons."

In April of 2022 a settlement agreement was reached

(1)

and a consent decree order issued. Due to sub-
stantial noncompliances with the conditions of
said consent decree, which has caused Mr. McClain
injuries and losses, class member plaintiff Mr. McClain
now seeks to intervene to protect his unique and
individually applicable interests as an unnamed class
member plaintiff in this case. In such regard,
Mr. McClain herein seeks prosecution of civil con-
tempt claims and special class member status for
supplemental claims and decrees against the
defendants — including temporary restraining order
with narrowed consent decree conditions speci-
fically addressing Mr. McClain's injuries and risks
of injuries from noncompliances with main con-
sent decree.

## Statement of Facts

As stated within the supporting declaration
submitted with this motion, Mr. McClain is a ser-
iously mentally ill pretrial detainee who has been
in Philadelphia Department of Prisons (PDP) custo-
dy since 5/10/23. (Decl. at paras. 2-3) Prior to
being in PDP custody Mr. McClain was in
the custody of the Pennsylvania Department of
Corrections where he had been recieving pre-
scription drugs Liatuda and Doxepin to treat

(2)

his diagnosed PTSD and schizoaffective disorder — the PDP mental health providers are refusing to provide Mr. McClain continuity of psychiatrict treatment with Latuda and Doxepin. (Decl. at paras. 4-5) Mr. McClain seriously needs the Latuda and Doxepin and PDP mental health providers' refusals to provide them to Mr. McClain violates the consent decree in this case. (Decl. at paras. 6-8) PDP medical providers are also in violation of the consent decree by their failures to treat Mr. McClain's genitourinary medical problems. (Decl. at paras. 9-12)

Furthermore, Mr. McClain is pro se plaintiff in 7 prisoners' civil rights 1983 lawsuits and pro se defendant on appeal for 2 criminal convictions. (Decl. at paras. 13-15) Mr. McClain has extreme and extraordinary prisoner needs for access to the prison law library, Mr. McClain has only been able to use the law library for 4 hours in the last 60 plus days, and Mr. McClain's inability to adequantly access the prison law library violates the consent decree in this case. (Decl. at paras. 16-19)

After a woman called the PDP and alleged Mr. McClain mailed her a letter threatening to rape her, PDP administrators termin-

(3)

ated Mr. McClain's inmate phone account and seized all of his incoming and outgoing prisoner mail — since at least 7/14/23 and continuing — without ever issuing Mr. McClain any misconduct report or holding any due process disciplinary proceedings, which violates the consent decree in this case. (Decl. at paras. 20-39)

Mr. McClain has been struggling with mental health issues of suicidal ideations for several years, and the noncompliances by PDP officials with the consent decree conditions, and concurrent abusive and unconstitutional conditions of pretrial confinement Mr. McClain is being subjected to, has been causing Mr. McClain to suffer from more compelling thoughts of suicide and self-harm than he usually experiences. (Decl. at paras. 40-45)

## ARGUMENT

## POINT I — MR. MCCLAIN IS ENTITLED TO INTERVENE

An unnamed class member plaintiff is permitted to intervene in class action litigation to represent his personal interests as part of the class.

(4)

See Rule 23(d), Fed. R. Civ. P. In this instance, Mr. McClain must be allowed to intervene in litigation because, as evidenced by ▇ the supporting declaration, Defendants and their agents and employees have caused Mr. McClain substantial injuries and losses by their consistent and excessive non-compliances with the consent decree order in this case, and Mr. McClain faces serious irreparable harm if his rights as a class member are not enforced. Gillepie v. Crawford, 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc).

Mr. McClain's intervention is necessary for Mr. McClain to raise his independent claims of violations of the consent decree conditions along side his related independent 1983 claims. Williams v. Lane, 851 F.2d 867, 873-74 (7th Cir. 1988). Mr. McClain also has a right to seek damages in the class action court for any injuries and losses he has suffered by the consent decree violations. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992); also, Vuitton et Fils, S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979) (if injury is demonstrated, a compensatory award of damages is mandatory); Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996) and cases cited (injunction class action

(5)

judgment does not prevent future damages claims by
Class Members); Klett v. Pim, 965 F.2d 587, 590-91
(8th Cir. 1992) (class judgment contempt motion
for damages before court that entered judg-
ment); see also, Spears v. Johnson, 859 F.2d
853, 855 (11th Cir. 1988) (1983 damages claim
transfered to class action court).

## POINT II – MR. MCCLAIN IS ENTITLED TO
## CONTEMPT PROCEEDINGS

   The supporting declaration attached to this
motion establishes grounds to justify Mr. McClain's
wishes to seek contempt sanctions, as contempt
proceedings is the proper way to deal with non-
compliance problems. Newman v. State of Alabama,
683 F.2d 1312, 1319-21 (11th Cir. 1982).

   A party who disobeys a court order may be
held in contempt. See Rule 70(e), Fed. R. Civ. P. There
are two types of contempt: criminal and civil.
Criminal contempt punishes a party who has
disobeyed an order, and is considered most
severe, while civil contempt is intended to
coerce future compliance with orders and,
where appropriate, compensate another party for
losses and injuries caused by noncompli-
ance. Int'l Union, United Mine Workers of Am. v.

(6) (2)

Bagwell, 512 U.S. 821, 827-30, 114 S.Ct. 2552 (1994). Correctional officers and other prison employees may be subject to contempt sanctions if they ~~violate~~ violate injunction against prison administration, see Rule 65 (d)(2), Fed. R. Civ. P., Morales Fellatio v. Hernandez Colon, 704 F. Supp. 16, 19 (D.P.R. ~~1988~~ 1988), and a defendant may be found in contempt for failing to make sure subordinates obey the order, Jordan v. Arnold, 472 F.Supp. 265, 289 (M.D.Pa. 1979). The failure to comply with some substantial portion of the court order cannot be defended by fact that Defendants' partially complied or made efforts to do so, Fortin v. Commissioner, 692 F.2d 790, 796-97 (1st Cir. 1982); and, intentional or willful disobedience need not be shown to establish contempt, while good faith is not a defense to a contempt claim. Chao v. Transocean Offshore, Inc., 276 F.3d 725, 728 (5th Cir. 2002); Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996).

POINT III — MR. MCCLAIN IS ENTITLED TO TEMPORARY RESTRAINING ORDER

Courts have broad discretion to enter orders to make sure prior order is carried out or its

(7)

purposes are accomplished. McComb v. Jackson-
ville Paper Co., 336 U.S. 187, 193-94, 69 S.Ct.
497 (1949); System Federation v. Wright, 364
U.S. 642, 647-48, 81 S.Ct. 368 (1966); U.S. v.
United Shoe Machinery Corp., 391 U.S. 244, 248-
49, 88 S.Ct. 1496 (1963); King-Seeley Thermos
Co. v. Alladin Industries, Inc., 418 F.2d 31, 35
(2d Cir. 1971); Hook v. State of Arizona, Dept.
of Corrections, 972 F.2d 1012, 1014 (9th Cir.
1992) (district court had jurisdiction to grant
an injunction enforcing prior consent decree
against prison officials); National Law Center
v. U.S. Veterans Admin., 98 F.Supp.2d 25, 26-
27 (D.D.C. 2000) ("courts' power to enforce its
own injunction by issuing additional orders
is broad, ... particularly where the enjoined
party has not 'fully complied with the court's
earlier orders'"). In such manner, Mr. Mc-
Clain should be granted specified temporar-
y restraining order.

   In determining whether a party is en-
titled to a temporary restraining order, courts
generally consider four factors: 1) whether the
party will suffer irreparable injury; 2) the
"balance of hardships" between the parties;
3) the likelihood of success on the merits;

(8)

and, 4) the public interest. Each of the factors
favors granting of TRO for Mr. McClain. El-
rod v. Burn, 427 U.S. 347, 373, 96 S.Ct. 2673
(1976) (as a matter of law, the continuing
deprivation of constitutional rights constitutes
irreparable harm); Estelle v. Gamble, 429 U.S. 97,
105, 97 S.Ct. 285 (1976) (interference with pre-
scribed healthcare treatment is a form of
unlawful deliberate indifference); Inmates of
Allegheny County Jail v. Pierce, 612 F.2d 754,
761-63 (3d Cir. 1979) (mental health care is
subject to same constitutional standard as
other forms of prison medical care); Bell v.
Wolfish, 441 U.S. 520, 538-39, 99 S.Ct. 1861
(1979) (under Due Process Clause, pretrial de-
tainees cannot be punished); accord, Block
v. Rutherford, 468 U.S. 576, 585-86, 104 S.Ct.
3227 (1984); Bounds v. Smith, 430 U.S. 817, 828,
97 S.Ct. 1491 (1977) (prison officials must "assist
in the preparation and filing of meaningful legal
papers by providing prisoners with adequate law
libraries or adequate assistance from persons
trained in the law"); accord, Lewis v. Casey,
518 U.S. 343, 116 S.Ct. 2174 (1996); Thornburgh v.
Abbott, 490 U.S. 401, 411-12, 109 S.Ct. 1874 (1989)
(First Amendment right for prisoners to communi-

(9)

cate by mail); _Procunier v. Martinez_, 416 U.S. 396, 413, 94 S.Ct. 1800 (1974) (same); _Nasir v. Morgan_, 350 F.3d 366, 373 (3d Cir. 2003) (same); _Jones v. Brown_, 461 F.3d 353, 360 (3d Cir. 2006) ("protection of an inmate's freedom to engage in protected communications is a constitutional end itself"); _Bieregu v. Reno_, 59 F.3d 1445, 1452 (3d Cir. 1995) (same, stating, "[s]uch a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation..."); _Inmates of Allegheny County Jail v. Wecht_, 565 F.Supp. 1278, 1284 (W.D. Pa. 1983) (detainees must be permitted to make calls to government agencies and lawyers); _Dawson v. Kendrick_, 527 F. Supp. 1252, 1314 (S.D. W. Va. 1981) (failure to provide "sufficient and regular telephone service" denied detainees adequate access to counsel); _Mitchell v. Untreiner_, 421 F. Supp. 886, 902 (N.D. Fla. 1976) (daily phone access required for pretrial detainees); _Inmates of the Suffolk County Jail v. Eisenstadt_, 360 F.Supp. 676, 690 (D. Mass. 1973) (same); also see, _Feeley v. Sampson_, 570 F.2d 364, 374 (1st Cir. 1978) (noting that a complete ban on calls to non-

(10)

lawyers would "limit the ability of a detainee to investigate and prepare his defense"); and, Johnson v. Galli, 596 F. Supp. 135, 138 (D. Nev. 1984) ("use of a telephone is essential for a pretrial detainee to contact a lawyer, bail bondsman or other person in order to prepare his case or otherwise exercise his rights"); futhermore, see, Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008) ("always in the public's interest for prison officials to obey the Constitution and law); Duran v. Anaya, 642 F. Supp. 510, 527 (D.N.M. 1986) ("[r]espect for law, particularly by officials responsible for the administration of the [] correctional system, is in itself a matter of the highest public interest").

In view of the serious dangers confronting Mr. McClain, the Court should grant Mr. McClain issue of the temporary restraining order he seeks.

## CONCLUSION

For the foregoing reasons, Mr. McClain's motion should be granted by the Court in its entirety.

(11)

Respectfully submitted,

Ralph W. McClain, Jr.
Class Member Plaintiff-Prose
#814451, C.F.C.F.
7901 State Road
Philadelphia, PA 19136

Date: 8/10/23

(12)

#20-1959

# CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2023, by way of prison mailbox with first-class postage paid, I caused true and correct copies of the foregoing documents ("Motion for Copies of Monitor Reports...", 2 "Order to Show Cause...," 3 "Motion to Intervene...", 4 "Declaration in Support of Motion to Intervene...", and 5 "Memorandum of Law in Support of Class Member McClain's Motion to Intervene...") to be served upon Class Counsel and Defendants' counsel, addressed to:

1)

Su Ming Yeh, Esq.
718 Arch St., Ste. 304 S.
Phila., PA 19106

2)

Anne B. Taylor, Esq.
1515 Arch St., 14th Fl.
Phila., PA 19102

Date: 8/16/23

By: _____
Ralph W. McClain, Jr.



Philadelphia Department of Prisons
Philadelphia, PA 19136
PPN 1036S

RECEIVED
AUG 28 2023
BY:_____

U.S.D.C.-E.D.PA.

19106331796 0019

Clerk of Court
United States District Court
Eastern District of Pennsylvania
2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106