**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS LAWSON,** | } | **JURY TRIAL DEMANDED** |
| **PLAINTIFF** | } | |
| | } | |
| **v.** | } | **CASE No. 23-cv-5010** |
| | } | |
| **THE RECEIVABLE MANAGEMENT SERVICES LLC,** | } | |
| **DEFENDANT** | } | |

_____

**PLAINTIFF RESPONSE TO DEFENDANT MOTION TO DISMISS [14]**
_____

**I.      INTRODUCTION**

1.          The Fair Debt Collection Practices Act ("FDCPA") is a consumer protection statute,

the purpose of which is "to eliminate abusive debt collection practices by debt collectors

. . ." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 602 (2010)

(quoting 15 U.S.C. § 1692(e)). Congress created the FDCPA in response to the "abundant

evidence of the use of abusive, deceptive, and unfair debt collection practices by many

debt collectors." 15 U.S.C. § 1692(a).

2.          Section 1692e(8) of the FDCPA provides that a debt collector may not use false or

misleading representations in connection with the attempt to collect a debt, namely, a

debt collector may not communicate or threaten to communicate "credit information

which is known or should be known to be false, including the failure to communicate that

a disputed debt is disputed." 15 U.S.C. § 1692e(8).

**II.      FACTS**

3.      Debt Collector is reporting on a past due debt owed to Progressive In Co in the amount of $92. Plaintiff called and disputed.

### III.      FDCPA

4.      In enacting The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Congress recognized the universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce. S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.

5.      The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory

damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir.1997).

6.      Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000). The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. 502, 505 (D. Conn. 1990); Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Reich v. Van Ru Credit Corp., No. 4-15-CV-2. (E.D. Texas, June 8, 2016).

7.      RMS violated 15 U.S.C §§ 1692e and 1692e(8) of the FDCPA, by failing to communicate that Plaintiff had disputed his debt, when RMS communicated other information to the consumer reporting agencies. §1692e(8) of the FDCPA is very clear; if RMS knew or should have known that Plaintiff disputed the alleged debt, it should have communicated the disputed status to any third parties, including the consumer reporting agencies, if RMS chose to continue to communicate information about the alleged debt.

8.      RMS attempts to escape liability under the FDCPA by claiming that it did not realize that Plaintiff was disputing a debt. However, this argument falls flat, as Plaintiff's statement ***"Yeah, you were kind of breaking up there, but, uh, basically, um, I seen an account reported on my credit report. I was just calling to double check and verify everything, and the balance seems to be a little off. But as of right now, I wanted to know who the creditor name was."*** Multiples federal district courts have found that the consumer can the ***"validity of the debt, any portion therefore"*** In Emerson v. Fid. Capital Holdings, Inc., the court found, in denying Defendant's Motion to Dismiss, that "[A]

statement that 'the amount reported is not accurate' evinces the intention to dispute the validity of at least a portion of the purported debt." Emerson v. Fid. Capital Holdings, Inc., No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015). Also see Rodriguez v. I.Q. Data International, 15-cv-383 pg. 3-4 (N.D.Ill November 4, 2015).

### IV.   DEFENDANT VIOLATED §§ 1692e and 1692e(8) BY FAILING TO COMMUNICATE THAT PLAINTIFF HAD DISPUTED HIS DEBT

9.       Section 1692e(8) of the FDCPA prohibits debt collectors from making false or misleading representations in connection with the collection of any debt:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

10.      This section of the FDCPA is clear; if a debt collector knows, or should know, that a specific debt is disputed, it must communicate that fact if it elects to communicate other information regarding that debt. This includes communications to credit reporting bureaus, like TransUnion. A dispute can be made for any reason and "a debt collector cannot require a consumer to have a valid reason or to submit particular types of documentation in order to dispute a debt." Hudspeth v. Capital Mgmt. Servs., L.P., No. 11-CV-03148-PAB-MEH, 2013 WL 674019, at *7 (D. Colo. Feb. 25, 2013) (citing DeSantis v. Computer Credit, Inc., 269 F.3d 159, 162 (2d Cir. 2001).

11.      In Hudspeth the court held, citing DeSantis that "[t]he consumer's right to take the position . . . that the debt is disputed does not depend on whether the consumer has a valid reason not to pay. The consumer, for example, may not recognize the name of the creditor, may not know whether he incurred the debt, may have a question whether the debt (or part of it) has been paid, or may be unsure of the amount. . . ." Id. Furthermore, "[t]here is no requirement that any dispute be 'valid' for this statute to apply; only that there be a dispute." Hoffman v. Partners in Collections, Inc., No. 93 C 4182, 1993 WL 358158, at *4 (N.D. Ill. Sept. 14, 1993).

12.      The term "dispute" is not specifically defined in the FDCPA nor does it gives consumer procedure for consumer to follow to dispute their debt. "But the ordinary meaning of "dispute" is clear. See Dispute, Mer12 Nos. 17-1773, 17-1860, 17-1866, 17-2622, 17-2756, 18-1734 riam-Webster Dictionary, http://www.merriam-webster. com/dictionary/dispute (last visited March 27, 2024) (defining "dispute" as "to call into question or cast doubt upon"). Evans v Portfolio Recovery Associates (7th Cir. Appeals May. 2, 2018). The ordinary meaning of "to dispute" something "ordinarily means 'to call into question,' or 'to oppose.'" Dixon v. RJM Acquisitions, LLC, No. 13-CV-02436-MSK-MJW, 2015 WL 729388, at *3 (D. Col. Feb. 17, 2015) (citing Merriam- Webster's Collegiate Dictionary 335 (10th ed. 2001); see also Carter v. Credit Bureau of Carbon County, No. , 2015 WL 4450698, at *3 (D. Colo. July 20, 2015) (finding that the statement "insurance should have paid the debt" was consistent with "the plain meaning of 'dispute,' ('to argue about' or 'to call into question')"). In Emerson v. Fid. Capital Holdings, Inc., the exact same statement, "the amount reported is not accurate," was found to constitute a dispute

because it "evinces the intention to dispute the validity of at least a portion of the purported debt." No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015). Also see Rodriguez v. I.Q. Data International, 15-cv-383 pg. 3-4 (N.D.IL November 4, 2015).

13.     Regardless of the validity of the amount reported, Plaintiff's statement constituted a dispute because it "called into question", or "evinced the intention to dispute" the alleged debt. Even more so, Plaintiff clearly stated what he disputed about this debt; ***the balance seems a little bit off***.

14.     After receiving this call RMS elected to communicate credit information to the consumer reporting agencies without informing them of the dispute. Because RMS communicated this credit information, including the alleged balance, date of delinquency and account number, RMS was also required to communicate Plaintiff's dispute to the consumer reporting agencies as well. But even though RMS had received Plaintiff's call, RMS failed to communicate the debt's disputed status to the consumer reporting agencies.

15.     RMS communications with the TransUnion, Equifax, and Experian consumer reporting agencies are considered communications in connection with the collection of a debt, since credit reporting by a debt collector can be considered a form of debt collection. Akalwadi v. Risk Management Alternatives, Inc., 336 F.Supp.2d 492, at 503 (D.Md. 2004) (stating that "reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the statute's requirement that the false, deceptive, or misleading representation or means be "in connection with" the collection of a debt.").

16.     Additionally, this was a material violation of the FDCPA because it was a direct violation of a specifically enumerated section of the FDCPA, and whether an individual disputes a debt is by its own nature material. In fact, the Eighth Circuit held that whether or not a debt is disputed is "a piece of information that is always material" and that "if a debt collector elects to communicate "credit information" about a consumer" it must communicate the dispute if a consumer made the dispute. Wilhelm v. Credico, Inc., 519 F.3d 416, at 418 (8th Cir., 2008); also see Baker v. I.Q. Data Int'l, Inc., 14-cv-0114-WJM-MEH (D. Colo., 2015).

17.     Thus, Defendant RMS failed to communicate that Plaintiff's alleged debt was disputed, even though it knew or should have known Plaintiff disputed the alleged debt, when it communicated other credit information regarding the alleged debt to the consumer reporting agencies, in clear violation of § 1692e(8). Defendant Motion to Dismiss should not be granted.

Respectfully Submitted,

Dated: March 27th, 2024

By: *Thomas Lawson*

Thomas Lawson - Pro Se Plaintiff
5911 Loretto Avenue
Philadelphia, PA 19149
(267) 304-8122
Butterlawson23@gmail.com

# <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document has been forwarded via

**CM/ECF** system to all parties entitled to notice of the same on March 27th, 2024:

Christopher A. Reese
Stradley Ronon Stevens & Young, LLP
457 Haddonfield Road, Suite 100
Cherry Hill, New Jersey 08002
Ph.: (856) 321-2408
Fax: (856) 321-2415
creese@stradley.com

Tyler J. Hamilton (*pro hac vice* motion pending)
Pilgrim Christakis LLP
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Ph.: (312) 280-0442
Fax: (312) 939-0983
thamilton@pilgrimchristakis.com