**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS REMICK, et al., on behalf of themselves and all others similarly situated,** | : | **No. 2:20-cv-01959-GAM** |
| | : | |
| **Plaintiffs-Petitioners,** | : | |
| | : | |
| **v.** | : | |
| **CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons,** | : | |
| | : | |
| **Defendants-Respondents.** | : | |

**PLAINTIFFS' REPLY MEMORANDUM ON
MOTION FOR CIVIL CONTEMPT OF COURT**

## I.     INTRODUCTION

Plaintiffs file this Reply Memorandum to provide a more focused view of the issues that divide the parties.  Because Defendants do not contest any of the material facts alleged by Plaintiffs, all of which are based on the four reports filed by the court-appointed Monitor who was selected and agreed upon by the parties, an *evidentiary* hearing is not necessary.  The Motion can be decided on the factual record of this case, which shows that the City has failed to come into substantial compliance with the core substantive provisions of the underlying Settlement Agreement ("Agreement") reached in April 2022.

A core provision of the Agreement was that the City of Philadelphia ("City") would ensure a return to normal operations of the Philadelphia Department of Prisons ("PDP") in a specified time period.  The City entered into this Agreement with full knowledge that there would continue to be substantial obstacles to achieving substantial compliance, given the need for significant improvements in the hiring and retention of correctional officers and other critical staff at PDP, and in ensuring the health and safety of the plaintiff class.

Plaintiffs' evidentiary submission, based on the factual findings of the Monitor, more than satisfies their burden of proving violations by clear and convincing evidence, and the "defenses" presented are without legal merit.  Defendants argue that: (1) there have been improvements on some collateral issues; (2) the proposed sanctions will not further compliance or fairly compensate class members; and (3) the Court should accept the assertion that the new Administration is serious in its intent to comply with the Agreement.  Defendants fail to assert any recognized defense to civil contempt of court.

## II.     THE FACTUAL RECORD AND LEGAL ISSUES ON CONTEMPT

### A.  The Facts of Record Prove Contempt of Court and There is No Need for an Evidentiary Hearing

The Motion for Contempt sets forth a detailed summary of the relevant facts supporting the Motion, based on the Monitor's reports for the period November 2022 to April 2024. The City does not dispute any of the findings of the Monitor in the four reports on those issues on which contempt is sought.  The first report, filed on November 4, 2022, highlighted several areas in which the consequences of non-compliance for Plaintiffs were particularly severe, including lack of adequate staffing and out-of-cell time for general population and segregation units.  There was a correctional staff vacancy rate of 41% with a shortage of 790 officers as of September 2022. Monitor's First Report at 7, ECF No. 181.  This "staffing crisis" was leading to a failure to resume normal (pre-pandemic) operations, *id.* at 15, limited out-of-cell time, lack of supervision, and inadequate and delayed medical care, *id.* at 11, 13, 19.

The second and third reports echoed these findings and found no significant improvements on the core issues.  The second report, filed on March 3, 2023, stated, "[T]he City's actions are not responsive to the enormity of PDP's staffing crisis and fail to acknowledge the duty imposed on Defendants by this Court to improve working conditions for more than

1,600 employees and reduce the suffering of more than 4,200 people confined in PDP facilities."
Monitor's Second Report at 13, ECF No. 185.

Defendants had received a "deferred" compliance status rating with respect to the
mandate of a plan to resume normal operations in the first report, but this was downgraded to
"Non-compliance" in the second report.  *Id.* at 23–24.  The Monitor also placed the City on
notice that continued non-compliance could lead the Plaintiffs to "move for appropriate
intervention by the Court, including possible contempt of court sanctions."  *Id.* at 24.

The third report, filed on October 12, 2023, again found Defendants out of compliance
and stressed that the lack of progress in abating the staffing crisis had created a "dire" situation.
Monitor's Third Report at 15, ECF No. 193.  The Monitor reported that "the trauma experienced
by Class Members is profound and clearly observable to all who work in, enter, or reside in PDP
facilities.  Exposure to extended periods of isolation, institutional violence, squalor, and neglect
breach all standards for humane confinement and is certain to have lifelong effects for many."
*Id.* at 3.

The fourth report, filed on March 29, 2024, documented continued non-compliance with
the Agreement.  As the Monitor stated, rather than acknowledging "the urgency and enormity of
its problem and the life-threatening conditions it breeds . . . [t]he City has instead pursued a
course of half measures steeped in bureaucratic and political rigidity with devastating
consequences for Class Members and PDP staff."  Monitor's Fourth Report at 3, ECF No. 204.
On the critical issue of correctional officer staffing, the correctional officer vacancy rate
*increased* by 4 percent during the reporting period, reflecting a correctional officer vacancy rate
of 48%.  *Id.* at 11.  During the two-year monitoring period, there has been a constant vacancy
rate of over 40% for correctional officers (over 800 correctional officer positions).  Moreover,

the population at PDP has increased, post-pandemic, to a number that has ranged from 4,600–4,800.

In sum, for the past two years Defendants have failed to show substantial compliance with the following provisions of Section II of the Agreement:

a.  Paragraphs 1 and 2, requiring implementation of new measures to ensure that there are "a sufficient number of correctional officers to cover all posts, according to PDP post-plans, on each shift at each facility," and mandating "no less than five hours of out-of-cell time each day" for all incarcerated persons in general population by August 1, 2022, and a presumptive six hour per day mandate by October 15, 2022. *Id.* at 6–7.

b.  Paragraphs 3 and 6, requiring "no less than one hour" of out-of-cell time for all persons in segregation units and a mental health program. *Id.* at 7.

c.  Paragraph 4, requiring a PDP "plan for return to normal operations of the PDP" with respect to out-of-cell time, programming, visits, and other services. *Id.* at 7.

d.  Paragraph 5, requiring "adequate and timely medical and mental health treatment [for] all incarcerated persons." *Id.*

e.  Paragraph 7, requiring access to the law library. *Id.* at 7–8.

f.  Paragraph 17, relating to weekly general inspections cleaning days for each housing area and laundry services. *Id.* at 10.

### B.  Legal Standards on Contempt of Court

Plaintiffs have fully addressed the controlling legal standards for civil contempt and have sought sanctions to coerce compliance and to compensate class members for the effects of the City's non-compliance.  Motion for Contempt at 20–25, ECF No. 205.  In response, the City does not contest any of the material findings by the Monitor, and therefore there is no need for an

evidentiary hearing.[1]  As to the legal arguments made by the City, as discussed below, the City

puts forth no valid legal defenses to contempt of court and fails to show that the requested

sanctions would not advance the purposes of civil contempt: coercion and compensation.

First, the City's claims of "significant efforts" to achieve compliance and its assertion that

the new Administration will "increase" resources and programs to hire and retain correctional

officers and other staff and to return to "normal operations" (City Br. at 4), even if credited, do

not state legal defenses to contempt of court.  The same is true for the City's argument that it has

made "significant efforts" to institute changes and polices recommended by the Monitor.[2]  City

Br. at 3.  Even with those efforts, the City is out of compliance with 26 of 37 mandates of the

Settlement Agreement, and the non-compliance is uniform on the core issues of staffing,

programs, and conditions of confinement.  Thus, "efforts" to comply with the terms of the

Agreement, and the new Administration's plan (with few details) to "increase" resources and

programs, and to hire and retain sufficient staff to allow a return to normal operations, are not

legal defenses to civil contempt.

Second, and relatedly, there is no "new Mayor" defense to contempt.  The City's non-

compliance status does not change with a transition of mayoral administrations.  Moreover, given

the fact that the "significant efforts" made over the past two years did nothing to move the needle

on staffing vacancies and the intolerable conditions of confinement that led to the Agreement, a

---

[1] Plaintiffs suggest that the Court schedule a conference to discuss future proceedings on the
Contempt Motion, including oral argument by the parties.

[2] The City mentions procuring "restraint chairs" to "allow several members . . . in segregation to
be out of their cells at the same time."  City Br. at 8.  But that process cannot satisfy out-of-cell
time requirements for exercise, visits, or showers and the denial of those activities will continue
to violate the Agreement.

promise for more resources and programs is hardly grounds for denying a contempt motion. Indeed, other plans by the Mayor with respect to criminal justice policies and policing are likely to lead to *increases* in the jail population that will only exacerbate the problematic conditions at the PDP. *See* Philadelphia Police Department 100 Day Report, available at https://www.phila.gov/media/20240411131032/PPD-100-Day-Report.pdf.[3]

Third, Plaintiffs' proposed sanctions take into account possible improvements in conditions of confinement and staffing by providing for a significant reduction in daily fines if certain benchmarks are met. Even improvements that do not amount to full compliance with the Agreement provide grounds for partial relief from the initial monetary sanctions.

Fourth, the City's assertion that sanctions that provide monetary compensation to class members would raise "interesting questions about whether or to what extent such compensation for alleged constitutional harms might preclude later suit by those individuals," is not a legal argument as it does not state any grounds that preclude the proposed sanctions.[4] And even if the assertion presented an issue for resolution, the hypothetical of a class member later suing correctional officials and/or the City involves separate legal claims based on violations of the Constitution or federal statutes for damages that flow from those violations, which are

_____

[3] We reference the 100 Day Report only to point out that these new policies will likely cut against the ability of the PDP to come into compliance with the Settlement Agreement. Moreover, the City's claim that the high population levels at the jails is the fault of the First Judicial District ("FJD") and that Plaintiffs should add the FJD as a defendant, are misdirected. First, the City agreed to the terms of the Agreement with full knowledge of the FJD operations, case flow and impact on the jail population, and therefore the City cannot defend Plaintiffs' motion on that ground. Second, if the City believes that it can prove that the FJD is legally at fault, it can move to implead the FJD.

[4] The statement that "interesting questions" are raised without a developed legal argument does not present a preclusion defense.

independent of sanctions awarded for contempt of court based on violation of a settlement agreement.

The City provides no argument that the contempt sanctions would preclude later suits for constitutional harms, and, to the contrary, a class action seeking declaratory or injunctive relief does not bar subsequent individual suits for damages.  *See, e.g., Fortner v. Thomas,* 983 F.2d 1024, 1030–32 (11th Cir.1993) ("[A] prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief"); *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984) (explaining that a Title VII damages suit is not barred by the res judicata effect of a previous Title VII class action, even though the plaintiffs had been class members and witnesses in the previous action and thus could have brought their damages claim in that case).  Furthermore, as explained in 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4455 (1981):

> The basic effort to limit class adjudication as close as possible to matters common to members of the class frequently requires that nonparticipating members of the class remain free to pursue individual actions that would be merged or barred by claim preclusion had a prior individual action been brought for the relief demanded in the class action. An individual who has suffered particular injury as a result of practices enjoined in a class action, for instance, should remain free to seek a damages remedy even though claim preclusion would defeat a second action had the first action been an individual suit for the same injunctive relief.

Finally, the argument that monetary sanctions should not be imposed as these payments would come from the PDP budget and thereby reduce resources necessary for hiring and retention of staff and other mandates under the Agreement, is a non-starter.  The City could pay sanctions separate and apart from the PDP budget.  Indeed, to reduce budgets for staffing, programs, and upgrading of conditions of confinement to satisfy monetary sanctions would only

lead to further and more coercive sanctions.  The proposed sanctions are necessary to compensate class members *and* as a coercive measure to achieve compliance.

Respectfully submitted,

*/s/ David Rudovsky*
David Rudovsky (PA 15168)
*/s/ Susan M. Lin*
Susan Lin (PA 94184)
*/s/ Grace Harris*
Grace Harris (PA 328968)
KAIRYS, RUDOVSKY, MESSING,
FEINBERG, & LIN, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400

*/s/ Su Ming Yeh*
Su Ming Yeh (PA 95111)
*/s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
*/s/ Sarah Bleiberg Bellos*
Sarah Bleiberg Bellos (PA 327951)
PA INSTITUTIONAL LAW PROJECT
718 Arch St., Suite 304S
Philadelphia, PA 19106
(215)-925-2966

*Attorneys for Plaintiffs*

DATED: May 24, 2024

*/s/ Bret Grote*
Bret Grote (PA 317273)
*/s/ Nia Holston*
 Nia Holston (PA 327384)
*/s/ Rupalee Rashatwar*
Rupalee Rashatwar (FL 1011088)
ABOLITIONIST LAW CENTER
PO Box 31857
Philadelphia, PA 19104 (412) 654-9070