IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS REMICK, et al., on behalf of themselves and all others similarly situated, | : : : | No. 2:20-cv-01959-BMS |
| **Plaintiffs-Petitioners,** | : : | |
| v. | : | |
| CITY OF PHILADELPHIA; and BLANCHE CARNEY, in her official capacity as Commissioner of Prisons, | : : : : | |
| **Defendants-Respondents.** | : : | |

**Declaration of Philadelphia Department of Prisons Commissioner, Michael R. Resnick, Esq.**

I, Michael R. Resnick, state the following:

1. I serve as the Commissioner of the Department of Prisons.

2. I started in this role on April 22, 2024.

3. I am making this declaration in support of the representations by counsel at the June 27, 2024 hearing on the Plaintiffs' Motion for Contempt.

### Department of Prisons Budget

4. Attached here as Exhibit A is a chart summarizing the adopted budgets for the Philadelphia Department of Prisons for each of fiscal years 2021 – 2025.

5. The City's fiscal year runs from July 1 to June 30, meaning that, for example, fiscal year 2021 runs from July 1, 2020 to June 30, 2021.

6. For the past fiscal years, this chart also shows the actual expenditures in each of the identified budget categories.

7. The City of Philadelphia annually produces budgets that show the City's proposed expenditures for the next five fiscal years. These five-year financial plans itemize the changes in expenditure from the closing fiscal year to the proposed budget for the next fiscal year.

8. The following exhibits also detail the changes in budgeted amounts for each of the budget categories from one year to the next for the Department of Prisons:

    a. Exhibit B: 23 FY2125 (June 29, 2020)

    b. Exhibit C: 23 FY2226 (June 25, 2021)

    c. Exhibit D: 23 FY2327 (June 30, 2022)

    d. Exhibit E: 23 FY2428 (June 15, 2023)

    e. Exhibit F: 23 FY2529 (June 26, 2024)

9. The City budgeted $135,537,939 for wages in fiscal year 2023 (July 1, 2022 – June 30, 2023), and spent $118,891,418 on wages that fiscal year.

10. The year 2025 budget allocates $172,652,248 for wages. This budgeted amount represents a 45.22% increase over the amount spent on wages in fiscal year 2023.

11. In 2023, the Philadelphia Department of Prisons had the highest hourly wage of all county correctional institutions in the Commonwealth of Pennsylvania. *See* Exhibit G, 2023 Facility Pay and Shift Survey. These numbers were developed before the recent arbitration award and associated pay raise.

**Work to Ease Staffing Pressures**

12. The Mobile Transportation Unit ("MTU") is the team primarily responsible for transporting incarcerated persons to medical appointments and for covering inpatient, bedside security.

13. The MTU has forty-five correctional officers assigned to it.

14. When the MTU is over-capacity, officers from the facility to which an inpatient person is assigned assume responsibility for bedside security.

15. Facility officers are responsible for secure transportation of incarcerated persons when emergency care is required.

16. Facility-assigned security staff also occasionally cover scheduled off-campus specialist visits.

17. The following information illustrates the ongoing work to ease the staffing pressures that result from having correctional staff assigned to housing units detailed to cover medical care outside the facilities.

*Secure Ward at Jefferson*

18. The Philadelphia Department of Prisons has entered into a contract with Jefferson to establish a secure ward and expects to start placing incarcerated individuals who require non-trauma-level inpatient care in that secure ward on July 22, 2024.
19. Each individual who receives inpatient care at a hospital currently requires two correctional officers to be present bedside at all times.
20. In May 2024, approximately 30 people required inpatient treatment for non-trauma-level care for a discrete number of days.
21. Those 30 individuals were, collectively, in that inpatient status for 63 days.
22. Each of those days required two shifts of two correctional officers each, totaling 252 correctional officer shifts assigned to inpatient, non-trauma level care in May 2024.
23. The secure ward has 9 patient beds.
24. The secure ward will be staffed by five correctional officers and one supervisor during the twelve-hour day shift, and will be staffed by three correctional officers and one supervisor during the twelve-hour night shift.
25. If nine individuals simultaneously require this level of care, the security coverage will only require 10 shifts per day (total staffing day and night shift) rather than the 36 shifts that would be required if these individuals were inpatient in a non-secure ward. In other words, use of the secure impatient unit could free up to 26 officers per day to work on the PDP campus, the equivalent of a recent Academy class.
26. MTU officers will be primarily responsible for this staffing, rather than facility-assigned security staff.

*Contracted Medical Transportation/Off-campus Specialist Visits and Open Ward Coverage*

27. I have been talking with United Security Incorporated, a company that contracts with the United States Marshals Service and provides transportation services for incarcerated individuals at the Federal Detention Center who require medical care at outside facilities.
28. I requested information about the number of individuals who had outside medical appointments in the month of May 2024. A summary of this information follows.
29. Approximately 114 individuals were transported for medical care from outside providers in May 2024.

30. Each of those visits required that the individual receiving care be accompanied by two security staff, a total of 228 officer-equivalents from the day shift be assigned to that transportation in June 2024. These trips are not necessarily a full shift, and are not necessarily all covered by facility staff, but illustrate to some extent the significant officer time currently dedicated to scheduled clinical visits every month.

31. In addition to having employees who can securely escort incarcerated persons to clinical appointments, United Security Incorporated can also provide medical-surgical inpatient admissions coverage. While the company will not provide this service on the first day of an individual's admission, they can assume security responsibility after that first day.

*Attendance*

32. So far in my limited tenure as Commissioner, the staff rate of reporting to scheduled shifts has increased.

33. In September 2023, 5.1% of scheduled hours in CFCF were taken as unscheduled sick leave.

34. In June 2024, 4.0% of scheduled hours in CFCF were taken as unscheduled sick leave.

35. These numbers are not year-over-year direct comparisons because of how timekeeping changed after the roll-out of the twelve-hour shift.

36. I am cautiously optimistic that staff usage of unscheduled sick leave will slowly but steadily reduce.

**Arbitration Award**

37. Local 159B is the bargaining unit that represents all correctional officers in the Philadelphia Department of Prisons.

38. I have attached here as Exhibit H a true and correct copy of the most recent award from the panel overseeing the Local 159B contract arbitration.

39. This award includes a 4.5% salary increase for all members of the bargaining unit.

40. The award includes hiring and attendance bonuses. The award changes the structure of the hiring bonuses to pay out a higher percentage at the end of the first year of service.

41. The provisions of this award include a waiver of the residency requirement for new correctional officers, so that the Department of Prisons can hire individuals who live outside the City of Philadelphia.

42. It is my understanding that approximately thirty percent of the employees of YesCare, Inc., the contracted medical and mental health provider at the Philadelphia Department of Prisons, live outside the City of Philadelphia.

**Recruiting Efforts**

*City of Philadelphia Office of Human Resources*

43. The City of Philadelphia Office of Human Resources has a contract with a recruiting firm.

44. That recruiting firm ran a campaign targeted at recruitment of correctional officers in late Winter/early Spring.

45. The results of that campaign are summarized in Exhibit I.

46. The recruiting firm is in the process of running a second recruitment campaign, which will close on July 8, 2024.

47. The Hiring Services team at the Office of Human Resources made targeted outreach to people who expressed interest in the correctional officer job but who did not attend a scheduled orientation. It is my understanding that over one hundred contacted people affirmed their ongoing interest and may attend a future orientation.

*Philadelphia Department of Prisons Director of Recruiting*

48. Since becoming Commissioner, I have created a new position at the Department of Prisons, specifically for the purpose of recruiting correctional staff.

49. I have hired David Robinson, who previously led the correctional officer union, Local 159B, as the in-house Recruiting Coordinator.

50. The Recruiting Coordinator has several long-term relationship building and outreach functions. I have also requested, in the near term, that additional steps be taken.

51. Specifically, I have requested that Mr. Robinson personally reach out to speak with each of the correctional officers who resigned in the past year about the opportunity to be reinstated.

    a. Under Philadelphia Civil Service Regulation 15-031:

        An employee who has resigned in good standing may be reinstated within one year to any position in the City service in the same class, in a comparable class, or in a lower class in the same or comparable series of classes having substantially the same qualification requirements, skills or

      aptitudes if such reinstatement is approved by the Director and by the appointing authority of the department in which the reinstatement is to be made. All employees reinstated following resignation must serve a new probationary period of six (6) months.

    b. Approximately forty-five individuals voluntarily resigned in the past year.

    c. I do not have information readily available to identify how many of them resigned while in good standing.

    d. These individuals resigned before the most recent salary increase.

    e. I have also requested that Mr. Robinson informally survey the separated employees to determine the reasons why they left employment with the Department of Prisons.

52. As stated above, these are initial steps for the new Recruiting Coordinator, and I anticipate he will further work to enhance the recruiting efforts of the Department.

53. I expect the Department of Prisons' recruiting will benefit from the many personal relationships that Mr. Robinson developed during his years of leadership in Local 159B.

54. I have reached out to the Department of Labor to inquire about amending Civil Service Regulation 15-031 to extend the eligibility for reinstatement from one to five years.

55. From a review of available information, it is my understanding that approximately 537 individuals voluntarily resigned between October 2019 and July 2023. A subset of this number of people are correctional officers who resigned in good standing.

56. If that amendment occurs, I will instruct Mr. Robinson to contact all eligible former employees to consider reinstatement as a correctional officer, the salary and benefits of which have significantly increased over the past several years of arbitration awards.

**Enhanced Data Analysis**

57. The Philadelphia Department of Prisons is expanding its data analysis capacity.

58. A new Director of Research and Analysis started on April 1, 2024.

59. She is supported by four analysts.

60. The charts attached as Exhibit J illustrate population trends during the month of May 2024.

61. I have been meeting with the District Attorney, the Defender Association, and the judge overseeing the MacArthur Foundation work on population management to discuss population drivers and strategies for reducing the number of individuals incarcerated in the Philadelphia Department of Prisons.

I, Michael R. Resnick, Esq., verify that the statements and facts set forth in the foregoing Declaration are true and correct to the best of my knowledge, information and belief. I understand that my statements are made subject to the penalties of 28 U.S.C. § 1746, relating to unsworn falsification to authorities.

Date: July 9, 2024                                                          /s/ *Michael R. Resnick*
                                                                                        MICHAEL R. RESNICK, ESQ.