IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS REMICK, ET AL.** : | |
| : | **CIVIL ACTION NO. 20-1959** |
| **v.** : | |
| : | |
| **CITY OF PHILADELPHIA, ET AL.** : | |

**ORDER**

This 16th day of August, 2024, after finding Defendants City of Philadelphia and the Commissioner of Prisons in Contempt (ECF 220),[1] and following in-depth consultation with this Court's team of Monitors, the following equitable remedy[2] is hereby **ORDERED:**

1. **RECRUITMENT, STAFFING, AND HIRING** [3]

   a. The City of Philadelphia (City) shall, within **30** days of the date of this Order, identify and provide to the Monitor outside recruitment firms with a proven track record of hiring for law enforcement agencies for consideration by the Court. Within **90** days of Court approval of a firm, the City shall hire that firm to manage and increase recruitment and hiring efforts for the Philadelphia Department of Prisons (PDP) and related jobs.

   b. The City shall maintain an internet portal to accept applications for employment to the PDP, and that portal shall remain open and continuously available to accept applications at all times.

---

[1] Defendants were found in contempt of this Court's July 12, 2022 Order (ECF 176), which approved and incorporated a Settlement Agreement (ECF 173-2).

[2] The Court will entertain additional argument as to whether any form of coercive or compensatory sanction is separately warranted.

[3] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraphs (1) through (5), (10), (13), (14), (17), and (18) of the Settlement Agreement.  ECF 173-2.

1

c. The City shall complete an evaluation of departments within the PDP, including but not limited to: Classification, Movement, and Registration; Management Information Systems; Booking; and external gate security, to determine if these departments could be served in full or in part by civilian employees. This evaluation should include a review of possible barriers to reclassification of these positions. The City shall complete this evaluation and report its findings to the Monitor within **30** days of the date of this Order.

d. Within **30** days of the date of this Order, the City shall identify for the Court companies that are capable of providing medical guarding of PDP's open ward patient population after the first 24 hours following admission and transportation of patients to offsite medical appointments. Within **90** days of the date by which the Court approves a selected company, the City shall commence negotiating a contract with the selected service provider. To the extent the hiring of services contemplated by the provision of this Order is a mandatory subject of bargaining, the contract with the company capable of the services contemplated by this paragraph shall remain in place consistent with any terms negotiated through bargaining, subject to final approval by the Court.

e. The City shall immediately authorize PDP to offer additional double-time pay for any day of the week as necessary to staff all vacant shifts.

f. To assist with employee retention, the City shall, within **150** days of the date of this Order, fund an adequate employee wellness program. Within **90** days of the date of this Order, the PDP shall appoint a Wellness Coordinator to oversee the PDP's employee wellness program.

    g. Within **60** days of the date of this Order, the City shall compare wages and non-wage benefits available to PDP employees and other City of Philadelphia employees and submit a description of any differences identified to the Monitor. The comparison shall include uniformed public safety personnel and all other PDP job classifications for which vacancy rates exceed ten percent.

    h. Within **30** days of the date of this order, the City shall initiate any necessary action to expand the timeframe for eligibility to rehire former employees contained within Civil Service Regulation 15-031 from one year to five years after resignation.

    i. Pursuant to the waiver of the Residency Requirement in the June 12, 2024 Act 195 Interest Arbitration Supplemental Award, *see* ECF 216-8, the City shall expand the category of eligible applicants to qualified individuals who reside outside the Commonwealth of Pennsylvania.

2. **HEALTHCARE ACCESS** [4]

    a. The City shall increase the budget for YesCare to provide additional healthcare staffing to serve as liaisons between security personnel and healthcare providers, to expand healthcare services to meet the current and future needs of the patient population, and to provide routine rounding in all housing units due to limited out-of-cell time.

        i. Rounding shall occur at least three times per week in all units until the PDP comes into substantial compliance with required out-of-cell time.

        ii. The budget increase shall be sufficient to allow YesCare to provide additional staff members as necessary to ensure substantial compliance with

---

[4] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraphs (4) through (6) of the Settlement Agreement. ECF 173-2.

      substantive provisions 4 ("Return to Normal Operations"), 5 ("Healthcare") and 6 ("Behavioral Health in Segregation") of the Settlement Agreement. *See* ECF 173-2, ¶¶ II(4)-(6).

b. The City shall fund an Access to Care team, to be housed within the Commissioner's Office, and to include, at minimum, one Deputy Commissioner, one Access to Care Manager at a correctional peace officer management rank, one secretary, one analyst, and at least five Health Care facilitators assigned to PDP facilities. The Access to Care team shall be fully operational within **180** days of the date of this Order.

c. Where medical care can properly be rendered using telehealth services, the City shall take all reasonable and necessary steps to employ such services to reduce the number of staff assigned to transport duties, even if the marginal cost of telehealth services is higher than that of in-person visits.

3. **PROGRAMMING AND SERVICES FOR CLASS MEMBERS** [5]

    a. Within **60** days of the date of this Order, the City shall identify and provide to the Monitor competent outside consultant(s) to conduct an objective evaluation of the Restorative and Transitional Services (RTS) Unit's functions and effectiveness. Within **60** days of approval by the Court, the City shall engage the identified consultant(s). The evaluation shall include, at a minimum, a comparative analysis of programs proven effective in other comparable detention/correctional facilities, and a recommendation for performance metrics against which to assess the performance of PDP employees working in RTS.

    b. The City shall install law library terminals in each unit in each facility for class members to use during their recreation time. The law library terminals shall be fully installed within **1 year** of the date of this Order.

4. **FACILITY MAINTENANCE** [6]

    a. The City shall authorize the PDP to expand services contractually provided by U.S. Facilities, Inc., and fund such expanded scope of services until necessary maintenance is performed at all PDP facilities. To the extent any maintenance needs are not included in the scope of work of the RFP that resulted in the contract, the City shall initiate bargaining on the subject or issue a request for proposals in accordance with the applicable collective bargaining agreements.

---

[5] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraphs (4), (5), and (7) of the Settlement Agreement. ECF 173-2.

[6] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraphs (4) and (17) of the Settlement Agreement. ECF 173-2.

    b. The City shall complete an analysis of the state of the physical plant and long-term capital needs at each PDP facility housing class members, identifying deficits that impact the conditions of confinement. This analysis should also provide the Commissioner of Prisons with detailed recommendations for a target number of staff employees needed to maintain each facility. The City shall complete the analysis and report its findings to the Monitor within **270** days of the date of this Order.

5. **FACILITY SECURITY** [7]

    a. The PDP shall confer with the Philadelphia Police Department to implement a system to report criminal offenses remotely that occur at PDP facilities, to include a video capability that would allow police personnel to interview complainants and witnesses remotely. The PDP shall report the outcome of these discussions to the Monitor within **60** days of the date of this Order.

    b. The City shall fund PDP's K9 detection program. Funding for the program shall be at a level sufficient to conduct routine and consistent sweeps for contraband at each institution and to ensure adequate facilities to house K9s and all necessary equipment.

    c. The City shall complete the purchase of technology that allows for prompt and efficient scanning, without violating any attorney-client privilege, of incoming legal mail for contraband within **60** days of the date of this Order.

---

[7] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraph (4) of the Settlement Agreement. ECF 173-2.

6. **POPULATION MANAGEMENT** [8]

    a. Within **120** days of the date of this Order, the Commissioner is directed to explore realistic, suitable options for relocation of class members to another secure facility, and report in writing to the Monitor any such options identified for assessment by the Court.

    b. The Prison Population Manager, or designee, in the Managing Director's Office, shall, on a monthly basis, evaluate data from the Tableau Prison Population Dashboard to identify individual members of the prison population being held on a charge other than murder, with no detainers, because of a failure to post bail. A report shall be issued and provided to the Monitor, the PDP Commissioner, the District Attorney and Office of the Public Defender, with a copy to the Administrative Judges and Supervising Judges for criminal matters in both the Court of Common Pleas and Municipal Court. This report shall include the person identifier (PPN), admission date, length of stay, total bail amounts, facility, lead charges, lead grades, and docket numbers, as well as the following:

        i. persons held on bail up to $100,000;

        ii. persons with significant medical needs such as cancer treatment and dialysis requiring frequent off-site medical appointments;

        iii. persons over the age of 60;

        iv. persons who are in PDP's minimum or community security categories, have only misdemeanor and F3 charges, and who have no more than a minor history of misconduct within the PDP; and

---

[8] The requirements described in this section primarily seek to remedy non-compliance with section II, paragraphs (2) and (3) of the Settlement Agreement. ECF 173-2.

    v. persons who are housed in protective custody.

  Any data not obtainable through the Tableau Prison Population Dashboard, including the docket numbers, lead charges, and lead grades shall be compiled by the Prison Population Manager, or designee, in the Managing Director's Office.

7. **REMEDY**

    a. As an equitable remedy imposed under this Court's contempt power, the City of Philadelphia is ordered to pay the sum of 25 million dollars[9] into the Registry of this Court.  These funds will be held by the Court solely as the prerequisite for a further order directing the Clerk of Court to disburse said funds to the City of Philadelphia Grants Fund.  The funds are to be designated for use exclusively to comply with the terms of this Order, with the City required to submit periodic reports to the Court as to all disbursements.  Upon further notice from the Court, the appropriate City representative shall execute Form AO-213P, with an original, non-electronic signature, to facilitate the disbursement via an electronic funds transfer.  The City is prohibited from reducing funds currently budgeted or projected for future fiscal years for the operation of the PDP because of its obligation to comply with this or any other provision of this Order.

8. **COMPLIANCE WITH THIS ORDER AND THE SETTLEMENT AGREEMENT**

    a. To the extent the expansion or hiring of services or civilianization of positions contemplated by the provisions of this Order are mandatory subjects of bargaining,

---

[9] The spreadsheets submitted by the City, in a sworn declaration by the PDP Commissioner, show that from fiscal years 2020 to 2023 (July 1, 2019 to June 30, 2023), the City of Philadelphia saved $19,304,126 by underspending its PDP budget, largely due to understaffing. *See* ECF 216, Exs. A-C.  This action was commenced in April 2020, and the spreadsheets from which this total was extracted date back several months before.  It should be noted, however, that if fiscal year 2020 were excluded from the calculations, the shortfall in City spending on the prisons is even greater, totaling $25,119,265.

including but not limited to the positions recommended by the Monitor for civilianization pursuant to provision 1.c, the City shall initiate bargaining and/or provide notice to the applicable union of its intention to expand or hire services or civilianize any positions within **45** days from the date of this Order.

b. The City shall, as required to comply with the mandates of this Order and the Settlement Agreement, hire or contract with a permanent full-time internal Compliance Coordinator within **120** days of the date of this Order with sufficient support staff to facilitate implementation of this Order and the Settlement Agreement.  In the meantime, the City shall remain responsible for compliance with all provisions of this Order and the Settlement Agreement.

   i. Within **60** days of appointment, the Compliance Coordinator shall submit a staffing plan to the Court via the Monitor for approval.  Remaining team members shall be appointed within **90** days following Court approval of the staffing plan.

   ii. Within **180** days of the date of this Order, Defendants shall submit a written status report on their progress toward implementation of this Order.  Subsequent status reports shall be submitted on the first day of each quarter until otherwise directed by the Court.

c. The Monitor shall continue to provide the Court with biannual status reports.

The Court retains jurisdiction over any matter which may arise in connection with the administration of this Order and may revise or order additional equitable relief or sanctions against the Defendants pending information provided to the Court in conjunction with this Order.

 /s/ Gerald Austin McHugh  
United States District Judge